JONES *v.* GREGG.

5-890

293 S. W. 2d 545

Opinion delivered June 18, 1956.

[Rehearing denied October 8, 1956.]

*James R. Hale,* for appellant.

*Price Dickson* and *W. B. Putman,* for appellee.

MARK E. WOOLSEY, Special Associate Justice.   This is an action by appellees, as plaintiffs, for the rescission and cancellation of a written contract of sale and purchase and escrow agreement made and entered into on the 23rd day of August, 1952, by and between appellants, who are husband and wife, as sellers, and appellees as

buyers. The relevant facts may be summarized as follows:

On the 23rd day of August, 1952, appellant, J. Hal Jones, was engaged in the general produce business at Lincoln, Arkansas, under the name "Hal Jones Produce Company," his general business being the selling of standard brands of poultry feed to the poultry growers of that area, in which business he had been engaged for a period of approximately three or four years. He and his wife were the owners, as tenants by the entirety, of his place of business in Lincoln, which consisted of a tract of land containing approximately one and one-seventh acres on which were located the buildings used in connection with his business and also a dwelling house. They had purchased this property on the 27th day of May, 1950, from Mae E. Norwood, who, on said date, executed to them, a warranty deed to said property, which deed contained the following provision: "A vendor's lien is retained for the sum of $5,000.00 purchase price balance, evidenced by a promissory note of even date, bearing no interest, due on or before one year from date."

This deed was filed for record August 21, 1952, two days before the date of the contract forming the basis of this litigation. The vendor's lien retained in said deed from Mae E. Norwood to appellants had not been released of record, although appellants had paid the sum of $5,000.00 named therein. This payment of $5,000.00, however, was not made on the maturity date of the note, but shortly thereafter. Appellants' grantor, Mrs. Norwood, contended that since they had not paid the note at the time of the maturity thereof, she was entitled to the sum of $22.17 interest, which she demanded of them before she would satisfy of record the vendor's lien. Appellants, apparently relying on the words "bearing no interest," had refused to pay the sum of $22.17 being demanded of them as interest.

In addition to the above real estate, appellants were also, at the time of entering into the contract herein, the owners of a G. M. C. truck and a stock of goods and

merchandise held by them for sale, which merchandise was contained in the store or place of business located on the above property.

After certain preliminary negotiations, the parties on the 23rd day of August, 1952, entered into the written contract aforesaid, in which appellants, as sellers, and appellees, as buyers, agreed that appellants would sell to appellees for a total purchase price of $17,500.00, said real estate "and the business known as the Hal Jones Produce Company, including its fixtures and equipment, at Lincoln, Arkansas." In this contract appellants agreed to furnish buyers an abstract showing a good merchantable title to said lands; and the parties further agreed that upon approval of title by appellees, appellees would pay appellants $5,000.00 of the purchase price and would execute and deliver to appellants their promissory note for the balance of $12,500.00, bearing interest at 6% per annum, interest payable annually, said sum of $12,500.00 to be paid on or before two years from the date of said note. The contract further provided that appellees would deposit with the escrow agent named in said contract said down payment of $5,000.00 and said note for $12,500.00, and that appellants would leave with said escrow agent their warranty deed retaining a vendor's lien for the unpaid balance of the purchase price, "which deed, check and note will be delivered to the respective parties upon approval of the title." Miss Suzanne Chalfant Lighton, a practicing attorney at law in Fayetteville, was named as escrow agent in said contract.

In addition to the above real estate and business, it was also further agreed by said parties in said contract that appellants would sell to the appellees the stock of goods and merchandise of said business at a price to be determined by an inventory to be taken as of August 23, 1952, and would also sell to appellees the 1952 G. M. C. truck at an agreed purchase price of $2,000.00.

The contract concludes with a paragraph providing that "all accounts receivable as of the close of business on August 23, 1952, will be due the sellers, and there-

after will be due the buyers, it being further agreed that the division of the accounts receivable between the parties will be made when collection is made.''

Appellees retained Miss Lighton, the escrow agent, as their attorney to examine the abstract and approve title for them. She had already examined the abstract a few days prior to the execution of the above contract, and all parties to the transaction understood that the vendor's lien aforesaid retained by Mrs. Norwood in her deed to appellants yet remained unsatisfied, and that the only point of contention between appellants and Mrs. Norwood was the item of $22.17 claimed by Mrs. Norwood as interest.

By agreement of the parties, the $5,000.00 check given as down payment on the purchase price of the lands and business was delivered by the escrow agent to appellant, J. Hal Jones, on the day the contract was executed upon his promise that he would have the vendor's lien satisfied upon his return from a vacation trip. The $12,500.00 note executed as a balance of the purchase price, together with the warranty deed from appellants to appellees, remained in the hands of the escrow agent until the trial of this cause, and were never by her actually delivered to the respective parties.

Upon the execution of the contract aforesaid, all the property including the real estate, stock of goods and merchandise and truck, was delivered to appellees, who thereupon engaged in the same business as appellant Jones had been engaged in, and for a while carried on the business under his trade name, Hal Jones Produce Company. All parties agree that the full purchase price of the truck and the stock of goods and merchandise was paid by appellees prior to the commencement of this action.

After his return from his vacation trip, which was made shortly after entering into the contract in 1952, appellant Jones still refused to pay to Mrs. Norwood the sum of $22.17 demanded of her as a condition to satisfying the vendor's lien; but on the 8th day of September, 1952, Mrs. Norwood executed a release deed releasing the

vendor's lien and delivered same to the escrow agent with instructions to deliver it to appellants only upon the payment of said disputed item of $22.17. The next day, September 9, 1952, the escrow agent wrote Mr. Jones advising him that the release deed had been left with her to be delivered to him upon the payment of said sum of $22.17, and advising him that title to the lands could not be approved until the vendor's lien was released. She suggested that he get in touch with her about the matter as soon as possible. Mr. Jones apparently ignored this letter; and on September 29, 1952, the escrow agent again wrote Mr. Jones urging that the matter be cleared up in order that she could approve title and deliver the escrow instruments to the proper parties. On January 6, 1953, she wrote appellees advising them that she had heard nothing from Mr. Jones and that "The title is in the same condition it was when I last talked with you."

Nothing further was done by appellants toward having the vendor's lien satisfied of record until after the commencement of this action, it being the contention of appellants that they did not owe Mrs. Norwood the $22.17 but that they told appellees that they would pay same when appellees' note or any part thereof (apparently meaning principal) had been paid. Appellees, however, stated that appellant Jones kept promising them that he would take care of the matter.

On September 24, 1953, appellees, who were still engaged in business on said property, paid appellants the sum of $750.00 as the interest on their note for the first year; and on August 23, 1954, they paid the further sum of $750.00 as the interest on said note for the second year, although the note still remained in the hands of the escrow agent. Appellees were also trying to borrow money on the property with which to pay their note, which was now due according to its terms, but were unsuccessful in their efforts. It further appears that appellant Jones had agreed to give them further time within which to pay the principal of the note.

It does not appear, however, that their failure to borrow the money on the property with which to pay

the note was due to the defect of the title, the reason being that the prospective lenders contacted by them were not willing to loan on this type of property at that time. There is no evidence that any loan was refused because of the unsatisfied vendor's lien retained by Mrs. Norwood in her deed to appellants; although, obviously, this lien would have to be cleared before any responsible person would make the loan on the property as security. The point is that appellees, in their negotiations for a loan on the property with which to pay the note, never reached the point where the vendor's lien entered into the matter.

Shortly after their note became due, appellees purchased from Mrs. Norwood other business property across the street from the property involved in this action, on which to carry on and conduct their business.

On October 8, 1954, appellees, without prior notice to appellants, filed their complaint in equity for the rescission and cancellation of only that part of the written contract of August 23, 1952, relating to the sale of the real estate and the business known as Hal Jones Produce Company, in which complaint they allege the failure of appellants to perform their obligation to have satisfied of record the vendor's lien shown in the abstract.

Appellants defended on the grounds that there could not be a partial rescission of the contract; that appellees were estopped from seeking rescission of said contract; and that they did not act within a reasonable time and were barred by laches. In a counterclaim they asked for a foreclosure of the vendor's lien retained in their deed to appellees.

The trial court found that that part of the written agreement between appellees and appellants "relating to the sale of the real property described in the plaintiffs' complaint and the business known as Hal Jones Produce Company together with its fixtures and equipment for a total consideration of seventeen thousand five hundred dollars ($17,500.00) is severable and divisible from the other provisions contained in said written agreement,"

and that appellees were entitled to rescind that part of the written agreement; that appellees had paid appellants $6,500.00 in principal and interest on the purchase price of said property, which sum they were entitled to recover from appellants; that appellees had occupied said premises for a period of 25 months and 13 days and had collected rentals from said property in the sum of $285.00; "and that the sum of $200 paid to the defendants for every month the premises were occupied by the plaintiffs together with the $285.00 rentals collected would make the defendants whole and place them in status quo"; and that appellants were entitled to recover from appellees the sum of $200.00 per month as the rental value of the property, plus the sum of $285.00 collected by appellees as rent, or a total of $5,371.58, which should be offset against said amount of $6,500.00 found to be due from appellants to appellees, leaving a difference of $1,128.42, for which amount appellees were entitled to judgment against appellants.

Based on these findings, the court decreed that the contract between the parties providing for the sale of the real property, and the business known as Hal Jones Produce Company, together with its fixtures and equipment, be cancelled and rescinded, and that appellees have and recover of and from appellants judgment in the amount of $1,128.42, which was declared to be a lien upon said real property. Appellants' counterclaim was dismissed for want of equity. From that decree comes this appeal.

For a reversal of the decree of the trial court, appellants argue and rely upon three propositions: (1) that appellees cannot rescind the contract in part; (2) that they did not seek a rescission within a reasonable time and are barred by laches; and (3) where there has been only a partial failure of consideration, there is no ground for rescission.

1. *Partial Rescission and Restoration to Status Quo.* Where a contract is entire and not divisible or severable, it must, as a general rule, be rescinded in toto and not in part; but if a contract consists of two or more

parts, which are independent of each other, a partial rescission may be allowed. This rule is stated in 12 Am. Jur., Contracts, Sec. 444, as follows:

"As a general rule the right to rescind must be exercised in toto. The contract must stand in all its provisions or fall altogether. Accordingly, a party cannot repudiate a contract or compromise so far as its terms are unfavorable to him and claim the benefit of the residue. A partial rescission, however, may be allowed where the contract is a divisible one."

The trial court found that the written agreement between appellants and appellees "relating to the sale of the real property described in plaintiffs' complaint and the business known as Hal Jones Produce Company, together with its fixtures and equipment, for a total consideration of seventeen thousand five hundred dollars ($17,500.00) is severable and divisible from the other provisions contained in said written agreement," that is, the provisions relating to the sale of the truck and stock of goods and merchandise of said business.

We agree with the trial court that the provisions of the contract relating to the sale of the real estate and the business are divisible and severable from the provisions relating to the sale of the truck. In fact, appellant Jones himself admits that the agreement as to the sale of the truck was separate from and independent of the sale of the real estate, business and stock of goods and merchandise.

On the authority of *Carr* v. *Hahn & Carter,* 133 Ark. 401, 202 S. W. 685, as well as other authorities hereinafter cited, and due to the nature of the subject matter, it is our opinion that the sale of the real estate, the business, and the stock of goods and merchandise were so interdependent and interrelated that they constitute an entire, and not a severable, contract. It is true that separate considerations are expressly stated for the real estate and business upon the one hand and the stock of goods and merchandise upon the other, the consideration for the real estate and business being $17,-500.00, and that for the stock of goods and merchandise

being its value to be determined by an inventory to be taken as of August 23, 1952. The same was true, however, in the case of *Carr* v. *Hahn & Carter*, supra, the contract in that case stating a consideration of $4,000.00 for the purchase price of materials, fixtures, machinery, etc., to be used in the construction of a dredge boat and a consideration of $125.00 per month as salary for the installation of the machinery on the boat. In our opinion in that case we said:

"The right of plaintiff to a lien turns on the question of whether the contract for the sale of the material, machinery, etc., and the installation of it on the new boat, was entire or whether it was severable . . . It will be observed that the written contract fixes a separate price for the articles sold and specifies a time for delivery; but it also provided that plaintiff should install the machinery and be paid specified wages for his services during the period of installation."

We there held, "it is apparent that the parties did not intend the provisions with respect to the sale of the material and machinery and the installation of the same on the new boat to be severable, but that they were so dependent on each other that they were to be treated as parts of an entire contract."

A good treatment of the interesting but difficult subject of entire and severable contracts is to be found in 17 C. J. S., Contracts, Secs. 331-336. Also in 12 Am. Jur., Contracts, Secs. 315-320. The distinction between entire and severable contracts is stated in 17 C. J. S., Contracts, Sec. 331, as follows:

"As a general rule it may be said that a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment."

As in all other written instruments, the primary test for determining whether a contract is entire or sever-

able is the intention of the parties to the contract. This intention is to be ascertained from the language used, the subject matter of the contract and the circumstances of the particular transaction.

Other aids in arriving at the intention of the parties include the singleness or apportionment of consideration, the divisibility of the subject matter, and the construction given to the contract by the parties themselves. As a general rule it may be said that a contract is entire when, by its terms, nature, and purpose, it contemplates that each and all of its parts are interdependent and common to one another and to the consideration, and that it is severable when, in its nature and purpose, it is susceptible of division and apportionment. Acts of the parties in treating the contract as entire or severable have an important bearing on its construction.

The real difficulty comes in the application of the general principles of law to each specific case. Taking all these elements into consideration, however, we are of the opinion that the sale of the real estate, the business and the stock of goods and merchandise, were so interrelated and interdependent that they constituted an entire contract, which was severable and divisible from that part of the agreement relating to the sale of the truck.

As to the stock of goods and merchandise, however, it appears that appellants had, prior to the commencement of this action, been placed in a position of status quo for all practical purposes, inasmuch as they had already received in kind, from time to time, goods and merchandise of like kind and quality, as well as of value, equal to the original inventory. Appellant, Hal Jones, virtually admits this. Therefore, so far as the stock of goods and merchandise is concerned, the result would be the same as if this part of the agreement were severable and divisible from the sale of the real estate and business.

We are still confronted, however, with the question of whether that part of the contract relating to the sale of the real estate and business was itself entire or severable. The contract provides that appellees shall pay $17,500.00 for the real estate, and ''the business known

as the Hal Jones Produce Company, including its fixtures and equipment, at Lincoln, Arkansas.'' The question becomes, ''Was the $17,500.00 consideration named in this part of the contract for anything more than the real estate, the fixtures and equipment?'' In other words, was the $17,500.00 the consideration for the tangible assets only, consisting of the real estate, the fixtures and equipment, or was it also for certain intangibles such as good will, customer contracts, the right to handle and sell an established brand of merchandise, etc., all of which would be valuable? What is meant by the phrase, ''and the business known as the Hal Jones Produce Company?'' In view of all the facts and circumstances, it appears to us that the phrase means something more than the mere concrete, physical and tangible assets, such as the real estate, fixtures and equipment. In fact, appellees have taken advantage of these intangible assets by acquiring from Mrs. Norwood other business property across the street from the property in question in which to carry on this same business. See 12 C. J. S., Business, p. 770, Note 5, also 9 C. J., p. 1101, Note 28 (g).

We are therefore of the opinion that the part of the contract relating to the sale of the real estate and the business known as Hal Jones Produce Company, including the fixtures and equipment, included not merely the tangible and physical properties in connection with said business, but also certain intangibles pertaining thereto, and that it is in itself an entire, and not a severable, contract; and that, since appellants were not placed in a position of status quo as to the intangibles, it was error to rescind this part of the agreement.

2. *Reasonable Time and Laches.* There can be no question that appellants obligated themselves to furnish appellees with an abstract of title showing a good merchantable title in and to said real estate. The condition of the escrow agreement was that the respective escrow instruments were to be delivered to the respective parties only upon the approval of title. It is conceded by all parties that the abstract did not reflect a good mer-

chantable title because of the unsatisfied vendor's lien retained by Mrs. Norwood in her deed to appellants. Appellees had the right to demand a strict compliance with the terms of the escrow agreement. This rule is stated in 19 Am. Jur., Escrow, Sec. 20, as follows:

"In the law governing performance of escrow agreements, there is no doctrine of substantial compliance to be found. Compliance must be full and to the letter, or else it constitutes merely noncompliance. Strict and full performance only can discharge a condition precedent to valid delivery by the escrow holder. The question involved is one of performance of the escrow agreement, not of the ability of the parties to perform the agreement, since such ability, without full performance, cannot amount to compliance."

No time limit is contained in the agreement within which appellants should furnish such abstract; and, in the absence of a specific time limit, appellants had a reasonable time within which to furnish the abstract showing a good merchantable title. Appellants themselves admit that they could have done this within a very short period of time by the payment of the disputed item of $22.17; but they did not have the vendor's lien released and satisfied until after this suit was brought, a period of more than two years. There can be little doubt, therefore, that had appellees acted within a reasonable time after the failure of appellants to comply with their obligation of the contract, and had they complied with the requirements of law and equity in the matter of restoring appellants to the position of status quo, they would have been entitled to a rescission of the contract.

While the law gave them the right to rescind the agreement upon the failure of the appellants to comply with their part of the contract, this was only one of their remedies and they were not required to exercise it. The law does require, however, that in order to rescind a contract, the rescission itself must be made within a reasonable time after the facts giving rise to the right of rescission arise or become known; and, unless such right

to rescission is exercised within a reasonable time after the discovery of the facts justifying the rescission, the party otherwise entitled to rescind will be deemed to have waived this right.

In this case, appellees entered into possession of the property and remained in possession, carrying on and conducting their business operations thereon until the filing of this lawsuit. Although their note for $12,500.00 still remained in the hands of the escrow agent; yet when the first installment of interest in the amount of $750.00 became due one year after the date of the contract, they paid this interest, notwithstanding the fact that appellants had not yet performed their part of the contract and had apparently ignored the letters written by the escrow agent to get them to do so. When the second installment of interest became due, two years after entering into the contract, appellees again paid the interest in the amount of $750.00. Both payments were made directly to appellants. At the time the second installment of interest was paid, the note had by its terms become due, and appellees were making efforts to borrow the money with which to pay same.

While it is argued in their brief that they could not borrow money on the property because of the unsatisfied vendor's lien, appellees themselves admitted that in their negotiations for loans the question of title never arose and that they never showed the abstract to any of the prospective lenders. One of the prospective lenders inspected the property and found same was commercial property, on which they were not making loans at that time and the application for a loan was refused solely and entirely because of the type of the property and not upon any defect of title. There is no evidence that any loan was ever refused because of any defect in the title.

Finally, on October 8, 1954, less than two months after they had paid the last installment of interest, and after the note had become due, and after they had been unable to borrow money with which to pay the note, appellees, without prior notice to appellants, vacated the

property and filed this suit for the rescission of the contract.

Appellants contend that during this time this particular property had declined in value about 25%; and, in this, they were corroborated by other witnesses. The chancellor, however, apparently did not accept this testimony, and we are not in a position to say whether this is a fact.

It is our opinion, however, that appellants should be sustained in their contention that suit for rescission was not, under all the circumstances, brought within a reasonable time after the grounds therefor arose, especially in view of the fact that the suit was filed without prior notice to appellants.

In the case of *General Motors Acceptance Corporation* v. *Hicks,* 189 Ark. 62, 70 S. W. 2d 509, this court quoted with approval the following language of the Supreme Court of Washington in the case of *Lundberg* v. *Switzer,* 146 Wash. 416; 263 Pac. 178; 59 A. L. R. 131:

"The right to forfeit a conditional sales contract for overdue payments cannot be exercised without demand and a reasonable opportunity to comply, after there has been a waiver of strict performance by the acceptance of delayed payments."

In the same case, Mr. Justice FRANK G. SMITH, speaking for this court, said:

"This principle is that one may lose the right to enforce a contract strictly according to its terms if he induces the other party to the contract to believe that he will not strictly enforce it, unless, after inducing this belief, he gives reasonable notice that the indulgence will not be continued and a reasonable opportunity is given to comply after such notice.

"This principle is not confined in its application to questions arising under conditional sales contract."

It, therefore, appears to us that, having remained in possession of the property for more than two years during which time they were operating the business, and

collecting rents, and having made two annual payments of the interest on their note, and having advised appellants that they were seeking to borrow the money with which to pay the note, appellees had at least induced appellants to believe that they would not strictly enforce their rights to a rescission of the contract, and, that after this lapse of time, they should have given appellants reasonable notice that they did intend to rescind same. In view of these facts and principles, we sustain appellants' second contention.

3. *Rescission on Partial Failure of Consideration.* It is next contended by appellants that there could be no rescission of a contract for the purchase of land until there has been shown a failure of title, and that there could be no rescission for a partial failure of consideration. An examination of the authorities cited in this section of appellants' brief convinces us, however, that they apply to executed contracts, rather than to executory and escrow contracts such as in this case.

The vendor's lien retained in the deed from Mrs. Norwood to appellants having now been satisfied of record, appellants are now entitled to the payment of the purchase money note executed by appellees with accrued interest, which note is secured by vendor's lien on the property; and the note now being in default, appellants are entitled to a foreclosure of their vendor's lien as prayed in their counterclaim.

The decree of the trial court is, therefore, reversed and remanded for further proceedings in conformity with this opinion.

In connection with such further proceedings, we also note that the original escrow instruments were admitted in evidence in the trial court and now form part of the record on appeal to this court. These instruments will, upon proper motion by the parties entitled thereto, be withdrawn from the record and delivered to the parties

entitled to same under the terms of the original escrow agreement.

Reversed and remanded.

HOLT, MILLWEE and WARD, JJ., dissent. Chief Justice SEAMSTER not participating.