KOOLVENT ALUMINUM AWNING CO. *v.* JOHNSON.

5-1975                                            331 S. W. 2d 265

Opinion delivered January 11, 1960.

[Rehearing denied February 22, 1960]

*James R. Hale,* for appellant.

*Rex W. Perkins* and *Charles Bass Trumbo,* for appellee.

JIM JOHNSON, Associate Justice. This is a suit involving an oral contract. In May 1957, appellant, Koolvent Aluminum Awning Company of Arkansas, Inc., made an oral contract with appellee, Zed O. Johnson, to install a fiberglas canopy in front of appellee's service station near the north edge of Fayetteville. The appellant informed appellee that the material used in the construction would be of the best grade and that the material would also be both leakproof and fireproof. Appellee agreed to pay $2,500 and sales tax of $75 for the job. Appellant undertook the installation and while the work progressed during the summer and fall appellee found fault with various aspects of the work.

When installation of the fiberglas began, appellee discovered from the labeling on the boxes that the appellant was using some "B" grade material instead of the more expensive "A" grade material. He complained to the workers about this fact but was told that only a small portion of the grade "B" material would be used, and such material would be used for the border work around the canopy. He permitted the work to continue. The evidence reflected that there is no practical difference between the two grades of fiberglas, and nobody other than a trained engineer can tell "A" grade from "B" grade.

After the work had progressed for some time, the appellee discovered that the material which had been used in the construction work was not leakproof as represented. He again complained to the employees of the appellant about this variation with the contract, whereupon they attempted to make repairs on the construction work, and patch up the leaks in the canopy. During the course of these repairs appellee told appellant's workmen to "tear it down and put it in the junk pile." They did not tear the canopy down. Later on, but before all of the fiberglas was put in, it came to the appellee's attention that the fiberglas material was not fireproof. Appellee did nothing to stop the work but instead permitted appellant to complete the job.

The work was completed around November 2, 1957. Under the agreement appellee was to pay the total price of $2,575 as soon as the job was completed. When appellant endeavored to collect, appellee complained that the canopy leaked and that the material was not fireproof as it had been represented to be, the evidence on this point being that the material met all of the requirements of the Fayetteville building code and that it is widely used in commercial construction. Upon Johnson's refusal to pay anything, appellant filed suit asked for judgment for $2,575 and costs and for foreclosure of its material and labor lien. This suit was filed within the statutory period of 90 days on January 21, 1958. Finally, more than one year after the work

was completed, on November 26, 1958, appellee filed an answer pleading: (1) a general denial; (2) the Statute of Frauds; (3) breach of warranty, with an allegation that he had rescinded the contract; and (4) alleging damages.

The case was tried on December 3, 1958, and the proof showed that appellee was at that time enjoying some of the benefits of the canopy. He offered no proof as to any specific amount of damages. At the conclusion of the trial, the trial court delivered an oral "opinion" finding, in substance, that appellant had substantially performed its contract. However, the decree, which was later filed, granted Johnson's prayer for rescission. This appeal followed.

All of the points relied upon by appellant for reversal pertain to the law of rescission and will be treated in this opinion as combined into one point.

Appellee contends that the oral contract executed between appellee and appellant contained at least three express warranties, concerning the quality and type of materials which were to be used in the construction of the fiberglas awning. First, the representation by the appellant that the material used for the awning would be "fireproof"; second, that the best or highest grade material would be used in the construction; and third, that the awning would be "leakproof."

He argues that it is well settled that where two parties contract and express warranties are made by the one, a breach of such warranties will give the other two alternative courses of action. He may either rescind the contract and relieve himself from liability thereon, or he may enforce the contract and sue for damages. Appellee in his answer elected not only to rescind but also elected to sue for damages.

As appellee chose to stand on the ground of rescission at the trial after the goods had been delivered to him, we are confronted with the question of whether or not he met the test required of him by the law with

reference to exercising his right to rescind within a reasonable time.

Did appellant know of the breach of warranty when he accepted the goods? The record reveals that he learned when the fiberglas was delivered that some of it was grade "B". Upon explanation of the intended use of the "B" grade material he permitted the workmen to use it.

Appellant learned that the fiberglas was not fireproof before all of it had been installed and he did not stop the installation. Appellant knew that the canopy leaked long before the job was completed, the last work being some months after the completion of the canopy and consisted of concrete repair made necessary by the installation of iron posts which supported the canopy.

In *Jones* v. *Gregg*, 226 Ark. 595, 293 S. W. 2d 545, we said of the right to rescind:

"While the law gave them the right to rescind the agreements upon the failure of the appellants to comply with their part of the contract, this was only one of their remedies and they were not required to exercise it. The law does require, however, that in order to rescind a contract, the rescission itself must be made within a reasonable time after the facts giving rise to the right of rescission arise or become known; and, unless such right to rescission is exercised within a reasonable time after the discovery of the facts justifying the rescission the party otherwise entitled to rescind will be deemed to have waived this right."

The only evidence in the record tending to indicate that appellee thought of rescinding the contract is his testimony that he told the workmen to "tear it down and put it in the junk pile." If this statement could be considered as notice to the seller of his election to rescind it must fail for the want of adhering to it since her permitted appellant to perform work on the contract after the statement without protest. The record reveals no affirmative act toward rescission was done by appellee until his answer was filed to the lawsuit which

was more than a year after the work was completed. We hold that failure to assert the right to rescind for this period was an unreasonable delay which amounted to a waiver of the right to rescind, hence, the trial court was in error in decreeing rescission.

Appellant has filed certain motions and affidavits stating in effect that appellee has destroyed a portion of the canopy since the decree of the trial court. The allegations in these pleadings have been controverted by the appellee. It is very doubtful that the motions and affidavits and response thereto were properly filed. In any event, these are matters which may be presented to and considered by the trial court upon a new trial.

Since this action is properly in Chancery Court on foreclosure of lien and since appellee has properly pleaded damages, in order that justice be done we have concluded that the cause should be reversed and remanded for further development of the action against appellee for damages for breach of warranty, consistent with this opinion. It is so ordered.

Reversed and remanded.

GEORGE ROSE SMITH, J., dissents.