Aubrey ELLISON d/b/a Ellison Refrigeration *v.* Bobby TUBB, Samuel A. Millican, Debra D. Millican and First National Bank of Magnolia

88-38                                                    749 S.W.2d 650

Supreme Court of Arkansas
Opinion delivered May 2, 1988

*Anderson, Crumpler & Bell, P.A.*, for appellant.

*Chandler & Thomason*, by: *Byron Thomason*, for appellees.

ROBERT H. DUDLEY, Justice. On April 6, 1979, the governor signed Act 746 of 1979, which modified the materialman's lien statute to provide that, effective October 1, 1979, notice must be given to a landowner before there is a delivery of materials in order for a materialman's lien to be perfected against the land. *See* Ark. Stat. Ann. §§ 51-608.1, -608.2, and -608.3 (Supp. 1985) and Ark. Code Ann. § 18-44-115 (1987). On April 23, 1979, after the passage of the act but before its effective date, the landowners, appellees Samuel and Debra Millican, entered into a contract with appellee Billy Tubb for construction of a home. Tubb, in turn, later entered into an oral subcontract with appellant Aubrey Ellison to install the heating and air conditioning unit in the home. On June 20, 1979, after passage of the act but still before its effective date, appellant Ellison furnished materials and labor. On October 16, and October 23, 1979, after the effective date of the act, he also furnished materials and labor. No materialman's notice was given to the landowners before the delivery of any materials. The landowners, the appellees, paid Tubb, the contractor, for the house but Tubb did not pay the subcontractor, appellant Ellison. Tubb was subsequently discharged in bankruptcy. The appellant filed suit to perfect his lien. The chancellor found the transaction between the contractor and subcontractor was a single contract to furnish the heating and cooling system. Therefore, the suit for the entire amount was filed within the

allowable 120 day period, *see* Ark. Code Ann. § 18-44-117 (1987). The chancellor further found that the appellant was entitled to a lien only for those materials and labor furnished before the effective date of the 1979 notice act. We affirm.

■ We first consider the issue raised on cross-appeal, whether the trial court erred in ruling that the transaction was a single contract. Whether a contract is entire or severable is determined from the intention of the parties. Intention may be ascertained from the subject matter of the contract, the circumstances of the transaction, and the language of the parties. *Jones v. Gregg*, 226 Ark. 595, 293 S.W.2d 545 (1956). When, as in this case, the parties probably never thought about whether their contract was entire or severable, and there were periodic payments, a court must determine whether there were periodic payments under one contract, or whether there were several different contracts with each contract calling for full payment at its completion.

17 Am. Jur. 2d, *Contracts* § 325 (1964) provides in pertinent part:

> As a means of ascertaining the intention of the parties, various tests have been adopted. According to some authorities, the criterion is to be found in the question whether the quantity, service, or thing as a whole is of the essence of the contract. If it appears that it is to be performed only as a whole, the contract is entire. Thus, the best test is said to be whether all of the things, as a whole, are of the essence of the contract: that is, if it appears that the purpose is to take the whole or none, the contract is entire; otherwise, it is severable. Another test supported by a number of authorities is that a contract is entire when, by its terms, nature, and purpose, it contemplates that each and all of its parts are interdependent and common to one another and to the consideration, and is severable, when, in its nature and purpose, it is susceptible of divisions and apportionment, and has two or more parts in respect to matters or things contemplated and embraced by the contract which are not necessarily dependent upon each other.

■ Determining the intention of the parties is an issue of

fact, and we affirm a chancellor's finding of fact unless it is clearly against the preponderance of the evidence. ARCP Rule 52(a). The facts reveal the following.

There was no written instrument to be construed, and the primary evidence regarding the nature of the agreement between appellant, the subcontractor, and Tubb, the contractor, came from the testimony of the appellant. Tubb did not testify. A part of appellant's testimony is fairly abstracted as follows:

> My deal with Bobby Tubb was that Tubb would call and tell me to air condition the house, usually if it was a heat pump or gas. If we had gas, we normally used gas. If we didn't have gas, we normally used a heat pump; but he would tell me what to use in each case. He didn't tell me what size to use. He would give me a set of plans. He didn't take bids with anybody else at this point. I don't know of any other bids. He didn't know what size unit I was going to put in there nor the exact price. He would give me the floor plan and tell me to put the job in. He asked that I bill him as I did the work. We stock equipment. At that time I was stocking heavier than I am now; usually in the neighborhood of $40,000.00 worth of equipment in the building so I took equipment out of my stock and put it on the job. I hadn't special ordered anything in all probability. He told me to do the whole job so when I went out there the first job and did the first part of it, I had already been asked to do the rest of it.

Some other parts of appellant's testimony seem contradictory to the concept that he and Tubb intended for him to do the whole job, but, taken as a whole, we cannot say the chancellor's ruling was clearly against the preponderance of the evidence. Therefore, we affirm the holding that the transaction was one entire contract, and the lien proceeding was timely filed.

On direct appeal the appellant argues that Act 746 of 1979, as applied by the chancellor, is a law which impairs the obligation of this contract in violation of article 2, section 17 of the Constitution of Arkansas and article 1, section 10 of the Constitution of the United States. The argument, in summary, is as follows:

a. The entire transaction was a single contract.

b. When the contract was entered into, which was before the effective date of the act, no preliminary notice was required for the remedy of perfecting a lien.

c. Before the contract was finished, but after the effective date of the act, Act 746 required a materialman to give the preliminary notice in order to perfect a lien.

d. The chancellor applied the act to that part of the contract which was performed after the effective date of the act.

e. Thus, the act, as applied, impaired vested rights under the contract in violation of the state and federal Constitutions.

In *Robards* v. *Brown*, 40 Ark. 423 (1883), in discussing the federal constitutional prohibition against passing laws which impair contractual obligations, we wrote:

The laws which are in force at the time when, and the place where, a contract is made and to be performed, enter into and form part of it. This is only another mode of saying that parties are conclusively presumed to contract with reference to the existing law. The Constitution forbids all laws, alike, which affect the validity, construction, discharge and enforcement of contracts. The State may change legal remedies, forms of action, of pleading and of process, the times of holding courts, etc., and may shift jurisdiction from one court to another. And such changes may have the incidental effect of delaying the collection of debts. But the Legislature cannot, under the guise of legislating upon the remedy, in effect, impair the obligation of contracts. The idea of right and remedy are so intimately associated as often to be inseparable. Now any legislation which deprives a party of a remedy substantially as efficient as that which existed at the making of the contract, does impair its obligatory force.

In *Padgett* v. *Bank of Eureka Springs*, 279 Ark. 367, 651 S.W.2d 460 (1983), we quoted with approval the following paragraph from 16A Am. Jur. 2d *Constitutional Law* § 675

(1979), discussing the difference between the impairment of a vested right and a remedy or mode of procedure:

> Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, it has become firmly established that there is no vested right in any particular mode of procedure or remedy. Statutes which do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedure, are not within the general rule against retrospective operation. In other words, statutes effecting changes in civil procedure or remedy may have valid retrospective application, and remedial legislation may, without violating constitutional guarantees, be construed . . . to apply to suits on causes of action which arose prior to the effective date of the statute . . . . A statute which merely provides a new remedy, enlarges an existing remedy, or substitutes a remedy is not unconstitutionally retrospective. . . .

At the time the parties entered this contract, Act 746 of 1979 was in existence and was to become effective October 1, 1979. The parties are "conclusively presumed" to have contracted with reference to the existing law. *Robards* v. *Brown*, 40 Ark. 423 (1883). Thus, it must be presumed that they contracted with reference to Act 746, and that the appellant was aware of the new procedure to perfect a lien.

In addition, the act did not impair the validity of vested rights in the contract itself. The contractual obligations were just as valid after the act became effective as they were before it became effective. The act merely substituted the procedure to be followed in perfecting the lien, and did not substantially deprive a materialman of the remedy of a materialman's lien.

Accordingly, the act did not unconstitutionally impair vested rights under the contract, and we affirm the trial court's ruling that the appellant had to give notice after the effective date of the act in order to perfect a lien.

NEWBERN, J., concurs.

DAVID NEWBERN, Justice, concurring. The majority opinion is correct in stating that the failure to comply with the notice requirement of Act 746 of 1979 had no effect on Mr. Ellison's

rights established in his contract with Mr. Tubb. There was no need for the trial court to consider whether the contract was severable, and thus there is no need for us to consider it. The issue the appellant should have addressed is whether any constitutional provision or other law prevents the notice requirement from taking effect with respect to materials furnished on a job begun before the law went into effect. To the extent Ellison may have a lien, it is created by statute and not by his contract with Tubb.

The basis of the materialman's lien claim is Ark. Code Ann. § 18-44-101(a) (1987). I find nothing in that statute indicating that a lien which may accrue at the beginning of any particular job, contract, or project, is "unseverable." In pertinent part the statute provides, "Every . . . person . . . who shall . . . furnish any material . . . for any building . . . under any . . . contract with the owner . . . or his . . . contractor . . . upon complying with the provisions of this subchapter, shall have, for his . . . materials . . . furnished, a lien upon the building . . . and upon the land belonging to the owner. . . ." The "provisions of this subchapter" were changed by Act 746, now codified at Ark. Code Ann. § 18-44-115(a) (1987), and thus, in my view, compliance with that section was necessary with respect to "any material" furnished after it became the law.

I fully concur in the result reached by the majority opinion, but I would delete the discussions of the singleness of the contract and impairment of contract, as I find them unnecessary.