Max BALDISCHWILER, et al. *v.* John E. ATKINS, et al.

93-268                                              864 S.W.2d 853

Supreme Court of Arkansas
Opinion delivered November 8, 1993

*Marian M. McMullan*, for appellant.

*David E. Smith*, for appellee.

TOM GLAZE, Justice. This case involves certain covenants

contained in an original bill of assurance and its later amendment filed in connection with a forty-one lot residential subdivision in Saline County named Oak Forest. In 1984, appellees had purchased a forty-acre tract which touched the southwest corner of the Oak Forest subdivision, and the tract is immediately south (sharing a common boundary) of an eighty-acre tract owned by Ms. Wood and Ms. Koonce. Appellees' and the Wood-Koonce properties were landlocked. In 1986, appellees approached Ken Harper, the developer of Oak Forest, about buying subdivision property so they could gain access to their forty-acre tract. Harper, who owned all of the subdivision, agreed.

Appellees took an option to purchase Lots 24 and 25, negotiated an easement over the Wood-Koonce property and then Wood and Koonce received a corresponding easement over Lots 24 and 25 which were purchased by appellees. Harper agreed to include in paragraph 4 of the subdivision's original bill of assurance an exception so that Lots 24 and 25 could be used for street purposes. The subdivision's other lots remained subject to the residential use restriction. The original bill of assurance was filed on February 7, 1986, but because it had not been properly acknowledged, an amendment which was properly acknowledged was filed on August 22, 1986. In 1987, appellees cut a street, extending across Lots 24 and 25, at an expense of $2,800.

Appellants, who own residential lots in Oak Forest, generally claim that, when Harper sold them their lots, the original bill of assurance and plat of Oak Forest shown them failed to reflect that Lots 24 and 25 had been excepted from the residential-use restriction.[1] They also assert that the street cut on those lots appeared as "a mere scraping of the land" and was insufficient to put appellants on inquiry that a street had been constructed. When appellants later became aware that Lots 24 and 25 had been excepted from the residential-use restriction contained in the original bill of assurance, they proceeded to amend

---

[1] Evidence indicated Harper may have shown some appellants an original bill or plat which reflected the residential restriction before the street-purpose exception for Lots 24 and 25 was added. As this case developed, that fact, if true, did not become an issue, and we agree with the trial court that appellants' remedy, if any, would be against Harper and is not relevant to the issues here involving the appellees.

the original bill pursuant to its provisions that allowed amendment of the bill's covenants and restrictions upon agreement of at least 50% of the lot owners and upon approval of the Saline County Planning Commission. This amendment, filed on November 8, 1991, modified paragraph 4 of the original bill so as to restrict use of *all* subdivision lots to residential or single-family dwelling purposes. In other words, under the modification, appellees' two lots became burdened with the residential-dwelling restriction.

Appellees filed suit claiming the appellants' amended bill of assurance was oppressive and deprived appellees of the use for which they had purchased Lots 24 and 25. Appellants counterclaimed, seeking to enforce their 1991 amendment, and also filed a third-party complaint against Wood and Koonce requesting cancellation of the easement granted them by appellees over Lots 24 and 25. The trial court set aside appellants' 1991 amendment to Oak Forest's original bill of assurance, finding that appellees had shown by clear and convincing evidence that appellants' amendment improperly affected appellees' use of Lots 24 and 25. It also dismissed appellants' counterclaim and third-party complaint with prejudice.

Appellants' two primary arguments on appeal are that, as a matter of law, the trial court erred (1) by voiding appellants' 1991 amendment to the Oak Forest bill of assurance and (2) in refusing to enforce the amendment. In arguing that the 1991 amendment is valid, appellants point out that, although appellees may have previously acquired an exception to Oak Forest's residential-dwelling restriction, appellees were also aware that, under the original bill of assurance's own provisions, appellees' street-use exception could be amended or cancelled upon at least 50% of the owners of property in the subdivision so agreeing. Appellants add that it is undisputed that their 1991 amendment was duly adopted in compliance with the amending provisions of the subdivision's bill of assurance.

Appellants largely rely upon this court's decision in *Eagle Mortgage Corp.* v. *Johnson*, 244 Ark. 265, 427 S.W.2d 550 (1968). There, Johnson and others were property owners in Hollywood Heights Subdivision, Saline County, Arkansas, which had a bill of assurance recorded on November 13, 1962, that contained a

restrictive covenant prohibiting temporary structures such as mobile homes. The bill also provided in its paragraph 12 that the covenants or restrictions in the bill could be amended or modified by the owner(s) of at least 50% in the area of the land in the subdivision. In March of 1967, Eagle Mortgage (and Western Realty Co.) owned more than 50% of the subdivision land area and amended the 1962 bill to permit mobile homes. Johnson brought suit to enjoin Eagle and Western from selling lots on which mobile homes would be placed. The trial court held that the provision contained in Hollywood Heights' bill of assurance, providing for the bill's amendment, was an "abuse of law," ambiguous, against public policy and therefore void. On appeal, this court reversed and held that a provision in a bill of assurance giving the power to subsequently amend or modify the provisions of the original bill is valid. In so holding, the court further stated the following:

> Certainly, we can understand the position of the appellees, and the desire of those who have built their homes, to maintain the original restrictions; however, Paragraph 12 was a part of the bill of assurance when the lots were purchased, and therefore, all lot purchasers were on notice that the restrictions could be modified, or cancelled, in whole or in part.

We agree with the holding in *Eagle*, but that decision is not controlling here. Unlike the situation before us now, no property owner in *Eagle* relied on a covenant before purchasing and using a lot for an authorized purpose, only to have that covenant and purpose violated later by an amendment to the original bill of assurance.

Here, the record reflects that, in February of 1986, Harper, the developer, owned 100% of the Oak Forest subdivision, and had authority at the time to permit appellees to use Lots 24 and 25 for street purposes. In addition, appellants had either actual or constructive notice of the street-purpose exception. That purpose was reflected in the subdivision's original bill which was first filed on February 7, 1986, and then on August 22, 1986, which was before all but two of the appellants had purchased lots in the subdivision. Michael and Cynthia Goodbar were the only two appellants to have purchased their lot before

August 22, 1986. The Goodbars purchased their lots on March 28, 1986, but even so, the record clearly reflects that they had obtained notice that the original bill filed on February 7, 1986, contained covenants and restrictions (which included the Lots 24 or 25 street-use exception) when they received a title insurance commitment.

In sum, when viewing the evidence in the light most favorable to the appellees, the record shows the appellees not only purchased Lots 24 and 25 relying on Oak Forest's covenant permitting them to establish a street, they also expended $2,800 in cutting that street. Appellants had at least constructive notice as early as 1986 that appellees had the right to use their two lots for street purposes; nevertheless, appellants failed to act to change the covenant pertaining to these lots until 1991. Even the right to enforce a restrictive agreement may be lost by laches or acquiescence, especially when one incurs expenditures. *Tiffany of Real Property* 3d Ed. 5871 (1939); *Briarwood Apartments* v. *Lieblong*, 12 Ark. App. 94, 671 S.W.2d 207 (1984). Appellees' position is even stronger here, since they incurred expenditures while relying upon a covenant which permitted them to cut a road. Appellants, having notice of appellees' special covenant and knowing how they could change that covenant under the bill of assurance, waited nearly five years before amending the subdivision's bill to bring appellees' two lots within the residential-dwelling restriction. In our view, appellants, by their delay, simply abandoned their rights to invoke the amending provisions of the Oak Forest bill of assurance. To hold otherwise would work an injustice on appellees.

Our holding also is consistent with the recognized rule that restrictive covenants are to be strictly construed against limitations upon the free use of property, and all doubts resolved in favor of the unfettered use of land. *Casebeer* v. *Beacon Realty*, 248 Ark. 22, 449 S.W.2d 701 (1970). In the circumstances, appellees here should be allowed the street use given them, especially when they purchased the two subdivision lots based upon that use and had incurred costs in establishing it.

Because we find the evidence clearly supports the result reached by the chancery judge, we affirm.[2]

---

[2]Appellees, in part, argue a different theory than the one on which we decide this appeal. Nonetheless, the chancery judge's decree, while not specifically mentioning laches or estoppel, does find that the appellants had notice of the street-use exception pertaining to Lots 24 and 25, and could not prevent appellees from exercising their rights which appellees bargained for and had partially undertaken to implement. Regardless of his reason for deciding in appellees' behalf, this court will affirm the chancellor if the correct result was reached. *Arkansas Health Services Comm'n, et al.* v. *Area Agency on Aging*, 303 Ark. 38, 792 S.W.2d 321 (1990).