John DOSSEY and Debbie Dossey, Husband and Wife
*v.* HANOVER, INC., and Hanover, Inc.
Architectural Control Committee

CA 93-1250                                         891 S.W.2d 67

Court of Appeals of Arkansas
Division II
Opinion delivered January 25, 1995
[Rehearing denied February 22, 1995.*]

*Jennings, C.J., not participating.

*Lloyd C. Burrow, Jr.*, for appellants.

*Kelley Law Firm*, by: *Eugene T. Kelley*, for appellees.

JAMES R. COOPER, Judge. The appellants in this chancery case purchased a lot in Hanover subdivision which was subject to various recorded protective covenants and restrictions, including a requirement that no building should be erected in the subdivision until the construction plans had been approved by the Architectural Control Committee. In April 1990, the appellants delivered to the Architectural Control Committee plans for construction of a home on their lot. Subsequently, the appellants had revised plans prepared, but the revised plans were never delivered to the Committee. On September 3, 1990, the Committee approved the original plans. Construction of a home employing the revised plans began in October 1990. In January 1991, the Chairman of the Architectural Control Committee confronted the appellants concerning the unapproved revisions and insisted on compliance with the approved plans. A Violations Committee provided for by amendment to the covenants found the appellants to be in violation of the covenants because the house as constructed deviated from the approved plan. The appellees filed

suit to enforce the covenants and, after a hearing, the chancellor found in favor of the appellees and ordered that the house be completed in conformance with the original plans. From that decision, comes this appeal.

For reversal, the appellants contend that the chancellor erred in awarding specific performance, in considering the lot's location in the subdivision in enforcing the covenant, and in finding that the appellants waived any objection to procedural irregularities by the Architectural and Violations committees. We reverse.

■ We first address the appellants' contention that the chancellor erred in ordering that the covenants be specifically performed by completing the house in conformance with the original plans. Specific performance is an equitable remedy which compels the performance of a contract on the precise terms agreed upon by the parties. *McCoy Farms, Inc.* v. *McKee*, 263 Ark. 20, 563 S.W.2d 409 (1978). Because specific performance is an equitable remedy, courts of equity are allowed some latitude in granting or withholding that relief depending upon the equities of a particular case. *Langston* v. *Langston*, 3 Ark. App. 286, 625 S.W.2d 554 (1981). Whether or not specific performance should be awarded in a particular case is a question of fact for the chancellor; on appeal, the question before the appellate court is whether the chancellor's decision to grant specific performance was clearly erroneous. *Stacy* v. *Lin*, 34 Ark. App. 97, 806 S.W.2d 15 (1991).

The record shows that the appellant's property was subject to a protective covenant establishing an Architectural Control Committee. The covenant established an Architectural Control Committee consisting of three members, and further provided that no buildings should be erected in this subdivision until the construction plans and specifications were approved in writing by the Architectural Control Committee. The covenants likewise established a Violations Committee to receive complaints concerning alleged violations of the protective covenants and restrictions and to determine whether any violation in fact occurred.

The appellants purchased their lot in the subdivision in July 1989 and submitted construction plans for a residence calling for an exterior with a substantial amount of brick. After these plans were delivered to the Architectural Control Committee, the appellants had revised plans prepared which deleted two areas of brick

veneer above the foundation level of the residence on either side of the front porch. The appellants assert that, due to a unilateral mistake, the Architectural Control Committee was not provided with the revised plans. In any event, it is clear that a second set of the original plans was delivered to the Architectural Control Committee and approved on September 3, 1990. Construction was begun in the following month. In January 1991, Arnold Lehman, president of the appellee, Hanover, Inc., and chairman of the Architectural Control Committee, confronted the appellants concerning the deviation of the residence as constructed from the plans approved by the committee. On January 31, 1991, a written request was submitted to the Architectural Control Committee asking that the committee approve the change and apologizing for the oversight. The Architectural Control Committee declined to consider the request on the grounds that the matter had already been turned over to the Violations Committee. Subsequently, the Violations Committee determined that a violation of the covenants existed, and the appellees brought suit to enforce the covenants. Although the chancellor declined to decide whether the residence as constructed utilized good quality materials or was compatible with other dwellings in the subdivision, he ordered specific performance on the grounds that the revised plans were not approved by the Architectural Control Committee. We hold that the chancellor erred in finding that the appellees established their entitlement to specific performance under the facts of this case.

Restrictions on the use of land are not favored, and restrictive covenants are strictly construed against limitations upon the free use of property with all doubts resolved in favor of the unfettered use of land. *Baldischwiler* v. *Atkins*, 315 Ark. 32, 864 S.W.2d 853 (1993). In construing covenants, the intention of the parties, as shown by the covenants, shall govern. *McGuire* v. *Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988). In the case at bar, the covenants themselves plainly state that the Architectural Control Committee was established "[t]o insure that all dwellings and accessory buildings constructed or erected in Hanover Subdivision shall have good quality materials and workmanship and are compatible with other dwellings and accessory buildings constructed or to be constructed in Hanover Subdivision . . . ." Nevertheless, the chancellor expressly declined to decide whether or not the residence as constructed utilized good quality materials, or was compatible with other dwellings in the subdivision. Furthermore,

we think that the record shows that the appellant's residence was in fact well-built and compatible with the other dwellings and accessory buildings in the subdivision.

Dennis Becker testified that he held a Masters of Architecture from Harvard University and had been a practicing architect for twenty-five years. He stated that he had inspected the appellants' home and was familiar with the subdivision in which it was located. He described the subdivision as a marriage of various traditional styles of architecture, and stated that the appellants' home was constructed in traditional style and was one of the best executed houses in the subdivision. He further testified that the deletion of the brick veneer from the side wings of the residence did not detract from the other traditional style houses in the subdivision, and that the residence as constructed was very compatible. Finally, he testified that there were at least six other homes in the subdivision which were similarly composed of brick masonry work up to the finish floor, with framework and siding finish above that.

John Mack testified that he was a professional architect, and that he had previously been employed by the appellees. He testified that the appellants' house, as constructed, substantially deviated from the approved plans, but that he could not characterize it as an aesthetic downgrade. He further testified that, in his opinion, the appellants' residence as constructed was still compatible architecturally with the other homes he had observed in the subdivision.

Given that both of the architects who testified were of the opinion that the materials and designs of the appellants' residence were of good quality and compatible with other buildings in the subdivision, and in light of our examination of the photographic exhibits and other evidence which indicates that the deviation from the approved plan had no substantial effect on the home's relative value, we hold that the chancellor's decision granting specific performance was clearly erroneous. The granting or withholding of specific performance depends on the equities of a particular case, *Langston* v. *Langston*, 3 Ark. App. 286, 625 S.W.2d 554 (1981), and it has long been held that specific performance should be ordered only where the importance of the remedy to one party outweighs the oppressiveness to the other. *Shields* v. *Trammell*, 19 Ark. 51 (1857). Here, it is clear that the

award of specific performance was based solely on the fact that the covenants were breached; in light of the evidence that the interests the covenants were intended to protect were not substantially harmed by the technical breach, we reverse and remand. Given our resolution of this issue, we need not address the remaining issues advanced by the appellants.

Reversed and remanded.

PITTMAN and MAYFIELD, JJ., agree.