2010 Ark. App. 10

**ELDER CONSTRUCTION COMPANY, Appellant,**

v.

**IVEY LANE, LLC, Appellee.**

**No. CA 09–63.**

Court of Appeals of Arkansas.

Jan. 6, 2010.

Rehearing Denied Feb. 11, 2010.

Keisling Pieper & Scott, PLC, by: John M. Scott, Fayetteville, for appellant.

Watkins, Boyer, Gray, Edwards & Noblin, PLLC, by: Bill Watkins, and Tony Noblin, Rogers, for appellee.

RITA W. GRUBER, Judge.

This case concerns the grant of specific performance to a vendor of land. The Washington County Circuit Court directed Elder Construction Company to specifically perform a contract between it and Ivey Lane, LLC, by purchasing three lots for a

total price of $247,300 within sixty days. Elder appeals that decision and contends that the trial court erred in ordering specific performance for three reasons: (1) the contract was not severable; (2) Ivey was not at all times prompt, ready, willing, and able to perform; and (3) equity did not support this remedy. We find no error and we affirm the circuit court's order.

On June 18, 2003, Elder and Ivey entered into a contract pursuant to which Elder agreed to purchase and Ivey agreed to sell sixteen unimproved residential lots in the Enclave Subdivision of Springdale for a total purchase price of $1,282,400. The numbered lots were listed in the contract next to the separate price for each individual lot. The lots varied in price from $77,500 to $84,900 depending on the lot's size, location, and topography. Elder was required to purchase the sixteen lots in four separate "take-downs." The closings for the takedowns were scheduled to occur every six months until all the lots had been purchased. Elder alone determined which four lots it would purchase in each of the separate take-downs.

Elder purchased twelve lots in the first three take-downs. However, Elder did not show up on November 23, 2005, for the scheduled closing on the final take-down on Lot #2 priced at $77,500, Lot #9 priced at $84,900, Lot #12 priced at $84,900, and Lot #46 priced at $77,500. Ivey filed suit seeking specific performance under the contract on the four remaining lots but later voluntarily dismissed this complaint. On April 7, 2006, Ivey sold Lot #46 to a third party for $77,500. On August 14, 2007, Ivey filed another complaint seeking specific performance for Elder's breach of contract on each of the three remaining lots: Lot #2, Lot #9, and Lot #12. Elder answered and filed a counterclaim for fraudulent inducement.

At the beginning of the trial, the circuit court found that the contract was not ambiguous. This finding is not challenged on appeal. However, the parties disputed at trial whether the contract was severable into sixteen different contracts. Ivey presented the testimony of Gary Griffin, part owner of Ivey, that the lots were not physically or topographically identical to each other and that the streets in the subdivision were not uniform. He testified that the lots described in the contract were independently priced and that some lots were more desirable than others because of their size or location or because building on them took less construction work. He also testified that the three lots at issue in this case were still on the market and that the absence, or sale, of one lot from the group would not change the value of the other lots.

Chris Elder, president and co-owner of Elder Construction Company, testified at trial that he chose not to close on the last four lots because he was "frustrated" over the lack of marketing and promotion Ivey was performing for the subdivision. He testified that Enclave had not been a successful subdivision and that it would be a hardship for him to close on the remaining lots. He admitted that Elder determined which four lots to include in each take-down, that each lot was individually priced, and that each lot was different. He also admitted that the market had changed and "gone south" since he had entered the contract to purchase the lots.

The circuit court entered an order on September 4, 2008, finding that Elder had breached the contract with Ivey, that Ivey did not have an adequate remedy at law, and therefore that Ivey was entitled to the remedy of specific performance. The court ordered Elder to close on the purchase from Ivey of Lots 2, 9, and 12 for the prices established in the contract no

later than sixty days from entry of the order. The circuit court also dismissed Elder's counterclaim with prejudice.

On appeal, Elder contends that the evidence was insufficient to support the circuit court's order granting specific performance. Specific performance is an equitable remedy that compels performance of a contract on the precise terms agreed upon by the parties. *Dossey v. Hanover, Inc.,* 48 Ark.App. 108, 891 S.W.2d 67 (1995). We review equity cases de novo on the record but will not reverse a finding by the circuit court unless it is clearly erroneous. *O'Fallon v. O'Fallon,* 341 Ark. 138, 14 S.W.3d 506 (2000). Whether specific performance should be awarded in a particular case is a question of fact for the circuit court. *Dossey,* 48 Ark.App. at 110, 891 S.W.2d at 69. On appeal, the question before us is whether the court's decision to grant specific performance was clearly erroneous. *Id.* In reviewing the circuit court's findings of fact, we give due deference to the judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Jennings v. Burford,* 60 Ark.App. 27, 33, 958 S.W.2d 12, 15 (1997).

To support its contention that the court's grant of specific performance was in error, Elder argues that the contract between the parties was not severable, as the circuit court had found. The supreme court in *Harris Lumber Co. v. Wheeler Lumber Co.,* 88 Ark. 491, 496, 115 S.W. 168, 170 (1908), held that "[w]here the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the whole is in its nature single and entire, the contract is severable." In *Harris* the court reversed the trial court's decision refusing to treat a contract for the sale of lumber as severable. Although the parties entered into one contract in *Harris* for the shipment of eleven carloads of lumber, each car load was to be billed separately and the price for each load was paid sixty days after the load's delivery.

The test for determining whether a contract is entire or severable is the intention of the parties to the contract. *Jones v. Gregg,* 226 Ark. 595, 604–05, 293 S.W.2d 545, 550 (1956). This intention is to be ascertained from the language used, the subject matter of the contract, and the circumstances of the particular transaction. *Id.* at 605, 293 S.W.2d at 550. The court may also look at the singleness of apportionment of consideration, the divisibility of the subject matter, and the construction given to the contract by the parties themselves. *Id.*

As a general rule it may be said that a contract is entire when, by its terms, nature, and purpose, it contemplates that each and all of its parts are interdependent and common to one another and to the consideration, and that it is severable when, in its nature and purpose, it is susceptible of division and apportionment. Acts of the parties in treating the contract as entire or severable have an important bearing on its construction.

*Id.* (quoting 17 C.J.S. Contracts, § 331). Determining the intention of the parties is a question of fact, and we will affirm the circuit court's finding on this issue unless it is clearly against the preponderance of the evidence. *Ellison v. Tubb,* 295 Ark. 312, 315, 749 S.W.2d 650, 651 (1988); Ark. R. Civ. P. 52(a).

The subject matter of the contract in this case consists of sixteen individual lots. While the contract stated the total price for all the lots being purchased pursuant to the agreement, the contract also specified a particular price, or consideration, for each lot, and both parties testi-

fied that each lot was different from every other lot. In addition, Elder chose which of the lots he would purchase in any particular take-down. Testimony at trial indicated that the sequence in which the lots were purchased, or the sale of one of the lots in the group to a third party, had no effect on the value of the remaining lots. This contract was susceptible to division and apportionment. Thus, there is evidence to support the circuit court's finding that the contract was severable and its finding is not clearly erroneous.

Elder's second argument to support its contention that the circuit court erred in ordering specific performance is that Ivey was not at all times prompt, ready, willing, and able to perform. Equity will not grant specific performance unless the one seeking relief shows that he has at all times been ready, willing, and able to perform in keeping with the agreement and has acted with promptness in seeking specific performance. *Sossamon v. Davis*, 271 Ark. 156, 160, 607 S.W.2d 405, 409 (Ark.Ct.App.1980). Elder argues that Ivey had no authority to sell Lot # 46, which sale was contrary to the terms of the contract, and that after this sale Ivey could not fully perform the contract.

In light of our decision affirming the circuit court's finding that the contract was severable, we reject Elder's argument. Lot # 46 was severable from the three lots that were not sold. There is no evidence to suggest that Ivey was not ready, willing, and able to sell Lots 2, 9, and 12 to Elder.

Finally, Elder claims that specific performance was not an appropriate remedy in this case. To support its argument, Elder claims that Ivey is in a far superior economic position than Elder, pointing to the profits already made by Ivey on this subdivision and the fact that Elder would have a difficult time selling and making a profit on the remaining lots. Elder also argues that a seller of real property receives only money when it seeks specific performance, and Elder contends that, because money is not a unique property, specific performance is not an appropriate remedy. Essentially, Elder argues that damages are an adequate remedy in this case.

■ Well-established law in Arkansas is that, where land is the subject of an agreement, a party to the agreement is entitled to specific performance. *See Dickinson v. McKenzie*, 197 Ark. 746, 126 S.W.2d 95 (1939); *Taylor v. Eagle Ridge Developers, LLC*, 71 Ark.App. 309, 29 S.W.3d 767 (2000). We have granted this remedy to vendors as well as to vendees. *See, e.g., Griffin v. Flemister*, 252 Ark. 907, 481 S.W.2d 718 (1972); *McIllwain v. Bank of Harrisburg*, 18 Ark.App. 213, 713 S.W.2d 469 (1986); *Vaughn v. Morris*, 12 Ark.App. 106, 671 S.W.2d 195 (1984). Whether specific performance should be awarded in a particular case is a question of fact for the circuit court. *Dossey*, 48 Ark.App. at 110, 891 S.W.2d at 69. The question before us is whether the court's decision to grant specific performance was clearly erroneous. *Id.* In reviewing the court's findings of fact, we give due deference to the judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Jennings*, 60 Ark.App. at 33, 958 S.W.2d at 15. In this case, Ivey entered a contract to sell lots to Elder. The law regards land as unique. *Shelton v. Keller*, 24 Ark.App. 68, 69, 748 S.W.2d 153, 154 (1988). Elder refused to close and Ivey is now burdened with the remaining lots. Particularly in light of testimony regarding the faltering real-estate market, damages in this case could be difficult to measure. We hold that sufficient evidence exists to support

the circuit court's order granting specific performance.

Affirmed.

ROBBINS and KINARD, JJ., agree.