Walter R. PADGETT and Carol Sue PADGETT *v.*
Peggy A. Haston *v.* BANK OF EUREKA SPRINGS,
Eureka Springs, Arkansas

83-55                                           651 S.W.2d 460

Supreme Court of Arkansas
Opinion delivered June 6, 1983

*Epley. Epley & Castleberry, Ltd.,* by: *Alan D. Epley,* for appellants.

*Coxsey & Coxsey,* by: *Kent Coxsey,* for appellee and cross-appellant.

*R. H. Mills,* for cross-appellee.

FRANK HOLT, Justice. In 1969 appellant Walter Padgett and appellee Peggy Haston, who were then married and residing in Louisiana, purchased Arkansas realty which is

the subject of this partition action. The purchase price of $3,500 was paid from their joint account. They acquired title as tenants by the entirety. In March 1976 Walter and Peggy sold their Louisiana home and divided equally the net proceeds of $14,000. Peggy bought a mobile home in Louisiana with her share. Walter moved to the Arkansas property and contracted for the construction of a house thereon. He expended $5,000 of his share of the proceeds from the sale of the Louisisna home. In addition he borrowed $20,000 from the Bank of Eureka Springs. The construction contract was executed in the names of "Walter R. Padgett and Peggy Padgett, husband and wife" and was signed by both parties. Similarly, the mortgage in favor of the Bank of Eureka Springs, cross-appellee, to secure the $20,000 note was executed in the names of "Walter R. Padgett and Peggy Padgett, husband and wife" and was signed by both parties.

In January 1978 Walter commenced an action for divorce. He alleged there were no property rights to be adjudicated. Eleven days later Peggy's Louisiana attorney wrote Walter's attorney stating that she wished to make a property settlement without the necessity of formal legal proceedings. She then entered an appearance and waived process, allowing an entry of a divorce decree without further notice to her. In March, 1978, the chancellor granted Walter a divorce, giving him custody of the parties' seventeen year old son. The chancellor made a finding there were no property rights to be adjudicated.

In September 1979 Walter married Carol Sue Padgett. Several months later Walter and Carol Sue executed two notes to the Bank of Eureka Springs. One note was in the amount of $14,911 which was the balance remaining on the original $20,000 note. The second note was in the amount of $10,000. Walter and Carol Sue also executed a mortgage in favor of the bank in the amount of $24,911, securing both notes with the property which is sought to be partitioned in this action.

In October 1980 Walter and Carol Sue Padgett were divorced. In December 1980 Walter and Peggy's son moved

from the premises in question at the request of Walter. This action for partition was commenced by Peggy in February 1981. The defenses of unjust enrichment, estoppel, laches, and homestead rights were interposed. The chancellor granted the partition. He held that the tenancy by the entirety was automatically dissolved into a tenancy in common by the 1978 divorce decree. He found that the doctrine of laches prevented Peggy from sharing in the increased value of the premises attributable to $10,364.71 improvements made subsequent to the divorce between Walter and Peggy. He ordered the property sold at public auction and the proceeds divided in the following priority: cost of the sale, Commissioner's fee and legal costs incurred in this action, including an attorney's fee of 6% of the sale proceeds to Peggy's attorney; $13,116.46 principal and accrued interest on the $14,911 note to the Bank of Eureka Springs; $10,364.67 to Walter R. Padgett, subject first to the lien of $5,000 and all accrued interest on the $10,000 note in favor of the Bank of Eureka Springs; $1,795.54 to Walter R. Padgett, the difference in the amount of principal owed the Bank of Eureka Springs, Eureka Springs, Arkansas, on June 26, 1980 and on April 14, 1982, date of trial; one-half of the remaining balance to be distributed to Peggy Haston; the remaining one-half to Walter Padgett. Walter's portions are subject to federal tax liens. Five points are raised on appeal and three on cross-appeal.

The appellants first argue that the doctrines of estoppel and laches preclude the appellee from claiming any interest in the property in question. This argument is based on the premise that the appellee allowed appellant Walter Padgett to construct a dwelling on the property, thereby greatly increasing its value, without asserting her claim to it until three years after the divorce and five years after the separation. They also contend that the appellee should have asserted her property rights in the divorce action. In *Foote's Dixie Dandy* v. *McHenry, Adm'r*, 270 Ark. 816, 607 S.W.2d 323 (1980), we reiterated the doctrine of estoppel as follows:

> Four elements are necessary: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the

party asserting the estoppel had a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Here, the dwelling was constructed in 1976 and the value of the property was thereby enhanced when the appellant Walter Padgett first moved to the Carroll County property. If Walter relied on Peggy's conduct to his injury at any time, this would have been the time at which the reliance took place. The evidence clearly shows, however, that, at this time, both Peggy and Walter understood that Peggy shared in the ownership of the property. She had joined in signing the mortgage on the property, at the request of Walter, as well as signing the contract for the construction of the dwelling. We cannot say that Peggy acted in such a manner as to give Walter the right to believe that she was asserting no interest in the property, nor can we say that Walter was ignorant of the critical fact that she had and claimed an interest in it.

In order to apply the doctrine of laches, it must be shown that there was an unreasonable delay in asserting some right and because of the delay the party claiming the protection of laches changed his position to his detriment so as to make it inequitable to enforce the asserted right. *Hendrix* v. *Hendrix*, 256 Ark. 289, 506 S.W.2d 848 (1974); and *Williams* v. *Grayson*, 224 Ark. 207, 273 S.W.2d 844 (1954). Again, the change of position occurred in 1976 when the dwelling was built. The appellant, Walter Padgett, did not change his position again with respect to the property until after the divorce in 1978, when he expended $10,364.67 to improve the house. Thus, Peggy's delay between 1976 and 1978 in asserting her claim did not injure Walter. We cannot say that the failure of Peggy to assert her claim to the property immediately in 1976, when the parties were initially separated and no plans were yet made for a divorce, so far as the record indicates, is sufficient to invoke the doctrine of laches.

The appellants next argue that the chancellor erred in awarding Peggy any interest in the value of the property

represented by the improvements thereon, because such an award results in the unjust enrichment of the appellee, citing *Frigillina* v. *Frigillina,* 266 Ark. 296, 584 S.W.2d 30 (1979). There, we said that a person is unjustly enriched and will be required to make restitution when another person confers a benefit through mistake, whether of fact or law. Here, we find no evidence that the appellant, Walter Padgett, built the dwelling which increased the value of the property under the influence of a mistake as to fact or law. His conduct in obtaining the appellee's signature on the house construction contract and mortgage to the bank indicates that he was not mistaken with respect to Peggy's interest in the property. As abstracted, he did not testify that he was under the influence of any mistaken belief as to her claim to the property.

The appellants next argue the chancellor erred in failing to apply the homestead exemption contained in the partition statute, Ark. Stat. Ann. § 34-1801 (Supp. 1981), which provides as follows:

> Any persons having any interest in and desiring a division of land held in joint tenancy, in common, as assigned or unassigned dower, as assigned or unassigned courtesy [curtesy], or in coparceny, absolutely or subject to the life estate of another, or otherwise, *or under an estate by the entirety where said owners shall have been divorced either prior or subsequent to the passage of this Act, except where the property involved shall be a homestead and occupied by either of said divorced persons,* shall file in the circuit or chancery court a written petition in which a description of the property, the names of those having an interest in it, and the amount of such interest shall be briefly stated in ordinary language, with a prayer for the division and for a sale thereof if it shall appear that partition cannot be made without great prejudice to the owners, and thereupon all persons interested in the property who have not united in the petition shall be summoned to appear. (Italics supplied.)

The italicized portion of the statute was added by Acts of

Arkansas, 1947, No. 161 § 1. Section 3 of Act 161, the emergency clause, states:

> It is hereby found and declared by the General Assembly that the present statute relative to partition of real property in Arkansas, having been enacted many years ago, is inadequate and *not broad enough to provide this form of relief in numerous cases* in the State of Arkansas, and which are working an unjust hardship upon citizens owning property jointly, in common, or in coparceny, absolutely or subject to the life estate of another or otherwise, under an estate by the entirety, where said owner shall have been divorced either prior or subsequent to the passage of this Act, and that such condition is hindering the alienation of real property and prejudicing the property rights of many citizens. (Italics supplied.)

The appellants contend that the homestead exception should be construed to limit the right to partition with respect to each form of tenancy listed in § 34-1801. We disagree. Act 161 added the portion of the statute creating the right to partition an estate by the entirety where the owners have been divorced and simultaneously added the homstead exception, which on its face applies only to "said divorced persons." Thus, the express language of the exception refers only to that portion of § 34-1801 creating a right to partition land held as tenants by the entirety by divorced persons. Furthermore, the emergency clause pf Act 161, quoted above, clearly indicates that the legislative intent was to broaden rather than narrow the availability of the remedy of partition. Accordingly, we hold that the homestead exception contained in § 34-1801 applies only to property held by divorced persons as tenants by the entirety and not to property held as tenants in common, as here.

The appellants also argue that the chancellor erred in applying Ark. Stat. Ann. § 34-1215 (Supp. 1981), which states:

> Hereafter when any Chancery Court in this State renders a final decree of divorce, any estate by the

entirety or survivorship in real or personal property shall be automatically dissolved unless the Court order specifically provides otherwise, and in the division and partition of said property parties shall be treated as tenants in common.

Section 34-1215 was first enacted in 1947. At that time the legislature gave to the chancery courts the authority to dissolve tenancies by the entirety into tenancies in common upon a final decree of divorce. Acts of Arkansas, 1947, No. 340. In 1975 § 34-1215 was amended by substituting the language quoted above for the old statute enacted by the 1947 Act 340. The appellants argue that since the tenancy by the entirety was created in 1969, six years before the dissolution of tenancies by the entirety was made automatic in the absence of specific provision otherwise in the divorce decree, it is an unconstitutional retroactive legislation to apply § 34-1215 in its present form. The appellants rely upon *Jenkins* v. *Jenkins*, 219 Ark. 219, 242 S.W.2d 124 (1951), where we held that Act 340 of 1947 could not be applied retroactively. Prior to 1947 our cases held that a decree of divorce could not dissolve an entire estate, so the courts could not divest one spouse of the estate by the entirety. *Jenkins* v. *Jenkins, supra.* Thus, in *Jenkins,* our holding was that a vested estate could not by subsequent legislation be made contingent upon continued marriage and the action or inaction of a court. However, all estates by the entirety created after the effective date of Act 340 of 1947 were made contingent upon continued marriage and the action or inaction of the court in any divorce proceedings. Here, the estate in tenancy by the entirety created in 1969 was, by the terms of Act 340 of 1947, contingent upon continued marriage. The tenancy by the entirety was, from its inception, subject to divestment upon divorce. The 1975 amendment merely changed the procedure by which the divestment might occur. The rule as to changes in procedures is stated in 16A Am. Jur. 2d § 675 (1979) as follows:

> Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, it has become firmly established that there is no vested right in any particular mode of procedure or

remedy. Statutes which do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedure, are not within the general rule against retrospective operation. In other words, statutes effecting changes in civil procedure or remedy may have valid retrospective application, and remedial legislation may, without violating constitutional guarantees, be construed . . . to apply to suits on causes of action which arose prior to the effective date of the statute . . . A statute which merely provides a new remedy, enlarges an existing remedy, or substitutes a remedy is not unconstitutionally retrospective . . . .

Finally, the appellants made an abbreviated argument that the award of attorney's fees to appellee Peggy Haston's attorney was not a "reasonable fee" for bringing the partition action. Ark. Stat. Ann. § 34-1825 (Supp. 1981) provides there shall be an allowance of a reasonable attorney's fee in a partition action. We have construed this provision as being mandatory. *Johnston v. Smith,* 248 Ark. 929, 454 S.W.2d 649 (1970); and *Cole v. Scott,* 264 Ark. 800, 575 S.W.2d 149 (1979). There is no fixed formula in partition actions, unlike probate proceedings, to be applied in the determination of an attorney's fee. *Cole v. Scott, supra.* We have said it is within the broad discretion of the trial court, although it must not be abused. *Equitable Life Assur. Society v. Rummell,* 257 Ark. 90, 514 S.W.2d 224 (1974). Here, suffice it to say that in our opinion the appellants failed to meet their burden of demonstrating an abuse of discretion by the chancellor.

Three points are raised on cross-appeal. The cross-appellant Peggy Haston first argues the chancellor erred in finding her guilty of laches and awarding cross-appellee Walter Padgett $10,364.67 from the proceeds of the partition sale for the improvements he made after the divorce in 1978.

In *Avera v. Banks,* 168 Ark. 718, 271 S.W. 970 (1925), the court said:

There is no hard and fast rule as to what constitutes laches. It is well settled that a court of equity may, in the

exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and where injustice would be done in the particular case by granting the relief asked. It is usually said that the two most important circumstances in such cases are the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other in so far as it relates to the remedy. (Citing cases).

Here, the parties were divorced in March 1978. The cross-appellant had an opportunity to raise her claim to the property in that proceeding, but she did not do so, though her attorney indicated she wished to resolve the property issues out of court. Instead, she waited three years before instituting this action for partition. During that time, her former husband, Walter, and his second wife, Carol Sue, the cross-appellees, borrowed and expended more than $10,000 to improve the property. The cross-appellant was in contact with her son who was living on the premises and she either knew or had opportunity to know of these improvements. Her excuse for the three year delay in asserting her rights is that she wished her son to live in the house. However, that is no justification for sleeping on her rights. The chancellor mitigated the effects of the doctrine of laches by limiting its application to the improvements after divorce. He did not declare that the cross-appellant had forfeited her rights with respect to the title to the property or the improvements made before the divorce. We find no error. For the same reasons we affirm the chancellor's award of $1,795.54 to Walter Padgett, cross-appellee, for the amount of principal reduced on the mortgage after the divorce and the marriage between Walter and Carol Sue Padgett.

Finally, the cross-appellant argues that the court erred in holding her interest in the property to be subject to a mortgage held by the Bank of Eureka Springs. She argues the original mortgage, which she signed, was extinguished when the cross-appellees refinanced the original loan and executed a new mortgage, which she did not sign. The original mortgage was never released of record. By its terms,

it secured future or additional debts owed by any person designated "Mortgagor." Walter Padgett was designated as a "Mortgagor." The subsequent debts were of the same character as the original debt. They were used to improve the same property as were the proceeds from the original debt. Furthermore, the subsequent debts were incurred during the period of time that the original mortgage was intended to secure the original note. Therefore, in the facts of this case, we hold the original mortgage continued to secure the additional debt incurred by Walter Padgett in 1979, even if, as the cross-appellant argues, the original debt was extinguished at the time the 1979 notes were executed. See Meek, *Mortgage Provisions Extending the Lien to Future Advances and Antecedent Indebtedness,* 26 Ark. Law Rev. 423 (1973).

Affirmed on direct and cross-appeal.