**MOBIL EXPLORATION & PRODUC-
ING NORTH AMERICA,
INC., Appellee,**

v.

**GRAHAM ROYALTY LTD., Appellant,**

**Petro–Lewis Funds, Inc., Appellee.**

No. 89–2238.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1990.

Decided Aug. 6, 1990.

Thomas C. Walsh, St. Louis, Mo., for appellant.

Paul C. Crumpler, Jr., Magnolia, Ark., for appellee Petro–Lewis.

Winford L. Dunn, Jr., Texarkana, Ark., for appellee Mobil.

Before ARNOLD and FAGG, Circuit Judges, and ROSS, Senior Circuit Judge.

ROSS, Senior Circuit Judge.

Mobil Exploration & Producing North America, Inc. (Mobil) filed this action in equity against both Graham Royalty Ltd. (Graham) and Petro–Lewis Funds, Inc. (Petro) for breach of contract, requesting relief in the form of specific performance and damages.[1] Mobil's claim was based upon the failure of Graham and Petro to grant to Mobil its preferential right of purchase under a Joint Operating Agreement. Graham and Petro filed cross-claims against each other alleging indemnity and Graham raised the affirmative defenses of laches and estoppel against Mobil.

The case was tried to the court, sitting without a jury. The trial judge found that Graham and Petro were jointly and severally liable for breach of contract, and ordered specific performance in favor of Mobil in the form of a conveyance of an oil and gas well located in Lafayette County, Arkansas, known as Ipco No. 2, to Mobil and the return of all proceeds from production over and above the purchase price. Judgment was entered against Graham for the sum of $557,357.07, the amount of net proceeds received by Graham, together with prejudgment and post-judgment interest. Further, Graham's cross-claim for indemnity was denied while Petro's cross-claim for indemnity was granted. Subsequently Graham filed this appeal against both Mobil and Petro.

I.

In 1984, Superior Oil Company and Petro each owned a one-half interest in Ipco No. 2, the ownership and operation of which was governed by a Joint Operating Agreement (JOA) entered into in 1959 between predecessors in title to Petro and Superior Oil. In January 1985, Superior Oil was acquired by Mobil Oil Company and ownership of Ipco No. 2 was placed in the wholly owned subsidiary, Mobil Exploration & Producing North America Inc., appellee herein.[2] Section 17 of the JOA grants each

1. Jurisdiction in the district court was based on diversity of citizenship, 28 U.S.C. § 1332. The jurisdiction of this court is premised on 28 U.S.C. § 1291.

2. No changes in personnel, location or policy occurred during the transfer of ownership from Superior Oil to Mobil Oil, therefore, references to appellee, both before and after January, 1985 will be to "Mobil."

party a preferential right to acquire the other's interest in the well in the event of an acceptable offer to purchase from a third party. According to section 17, the selling party is required to promptly communicate to the joint owner an offer to purchase by a third party. The non-selling party thereafter has ten days to purchase the property under the same terms offered by the third party.

In February 1984, Graham offered to buy a number of properties from Petro, including its fifty percent interest in Ipco No. 2. On March 2, 1984, Graham submitted a formal proposal to purchase a total of twenty-five oil and gas properties from Petro for a total consideration of $7,000,000, including Petro's fifty percent interest in Ipco No. 2, which was valued at $678,000.

Petro formally accepted Graham's offer to purchase on March 8, 1984 (Petro–Graham agreement). Thereafter, an "Assignment, Bill of Sale and Conveyance" was given by Petro to Graham on March 30, 1984, effective as of January 1, 1984. The assignment was specifically subject to the terms of the JOA and the obligations of Petro under that agreement were assumed by Graham. It is undisputed that no notice was given to Mobil prior to the closing on March 30, 1984, as required by section 17 of the JOA.

Paragraph 7 of the Petro–Graham agreement provided that Graham was to satisfy itself with regard to title to the interests and related contractual obligations, and if title was found to be defective, Graham was to specify all defects in writing by the closing date. Any unremedied title defects could be waived, or the parties could terminate the agreement or modify it to delete properties for which good title could not be delivered.

On March 29, 1984, Graham sent to Mobil, as the operating partner, a letter advising Mobil of Graham's purchase of Petro's interest in Ipco No. 2 and requesting that future proceeds from well operations be sent to Graham rather than Petro. Another confirmation of Graham's purchase was sent to Mobil on May 3, 1984. The evidence indicated that Mobil became aware of the purchase price and the details of the transaction in mid-June 1984, and at that time instructed its field people to make an evaluation of the well. While conducting a title examination in April or May 1984, Graham discovered Mobil's preferential right and advised Petro.

Final adjustments to the purchase price, based upon an audited final settlement statement, were to be made within ninety days of closing. A post-closing settlement statement was negotiated and agreed upon on October 9, 1984. Two days later, on October 11, 1984, Mobil sought to exercise its preferential right under the JOA. Both Graham and Petro determined that Mobil's attempt to assert its preferential right was untimely and refused to recognize Mobil's claim.

Mobil filed this action in equity against both Petro and Graham seeking specific performance and damages, alleging that Petro and Graham had breached the preferential purchase provision of the JOA. Graham and Petro then filed cross-claims against each other alleging indemnity. The district court found that Petro and Graham were jointly and severally liable to Mobil for breach of contract. Additionally, the court found that under the terms of the contract, Graham had an obligation to indemnify and hold Petro harmless from all liability. Graham now appeals the district court's decision.

## II.

■ Under section 17 of the JOA, Petro had an obligation to communicate to Mobil the receipt of an offer from a third party which proposed to buy Petro's one-half interest in Ipco No. 2. According to the agreement, Mobil would then have ten days to indicate its intent to exercise its preferential right to buy Petro's interest on the same terms proposed by the third party. Graham argues on appeal that because it was not a party to the JOA between Petro and Mobil, it cannot be held liable for breach of that agreement. Graham further asserts that it was unaware of Mobil's preferential right before closing and there-

fore cannot be held responsible for failing to notify Mobil.

We find Graham's arguments to be without merit. The assignment of Petro's interest in Ipco No. 2 to Graham, as evidenced by the document entitled "Assignment, Bill of Sale and Conveyance," dated March 30, 1984, expressly provided that Graham took title to Ipco No. 2 subject to the JOA. Furthermore, the Petro–Graham agreement of March 8, 1984, provided that Graham was "to satisfy [itself] with regard to [Petro's] title to the Interests, ... and related contractual obligations." Prior to closing, Graham had access to all files of Petro and performed a title search in Petro's office. The JOA was included in those files examined by Graham.

Graham's contention that actual knowledge of the preferential right was required before Graham could be held to have taken the interest in Ipco No. 2 subject to such rights is in direct conflict with Arkansas law which clearly provides that a purchaser is bound by any instrument which forms a link in the chain of title. *See Diamond Shamrock Corp. v. Harris,* 284 Ark. 270, 681 S.W.2d 317, 320 (1984). Because Graham had constructive knowledge of Mobil's preferential rights, Graham acquired Petro's interest in Ipco No. 2 subject to such rights. Therefore Graham, together with Petro, breached Mobil's contractual rights under the JOA by concluding the assignment without giving Mobil prior notice.

### III.

Graham next argues that Mobil was guilty of laches and should be estopped from seeking to enforce its preferential right under the JOA. Graham contends that Mobil learned of the sale by Petro to Graham by April 16, 1984, knew all of the details of the transaction no later than June 18, 1984, but delayed in asserting its claim until October 11, 1984, two days after the post-closing settlement between Petro and Graham. In the opinion of Graham, Mobil delayed asserting its claim while the price of gas increased, and consequently Mobil should be estopped from asserting its preferential right.

Mobil, on the other hand, argues that the material and substantial breach by Graham and Petro in failing to give proper notice relieved Mobil of any duty to perform under the terms of the JOA, specifically to exercise its preferential right of purchase within ten days. Mobil further asserts that the price of gas in fact declined during the relevant time frame.

The doctrine of laches does not apply unless there is an unreasonable delay coupled with some change of position which makes it inequitable to enforce the claim. *Padgett v. Haston,* 279 Ark. 367, 651 S.W.2d 460, 463 (1983). Where one party breaches a contract and defends that the other party did so first, defendant's obligation to perform may be discharged if plaintiff's breach is material and sufficiently serious. *TXO Production Corp. v. Page Farms, Inc.,* 287 Ark. 304, 698 S.W.2d 791, 793 (1985).

The district court herein found that Mobil's attempts to obtain its preferential right of purchase were timely and reasonable and that no prejudice resulted to either Graham or Petro through Mobil's delay in asserting its claim. From our review of the record we find no evidence to support Graham's contention that the price of gas rose significantly during the relevant time frame. We therefore conclude that Graham was not prejudiced by Mobil's delay in asserting its claim.

Graham's assertion of the affirmative defense of estoppel is also without merit. The party claiming estoppel must prove he relied in good faith on some act or failure to act by the other party and that, in reliance on that act, he changed his position to his detriment. *Pollack v. Pulaski Bank & Trust Co.,* 30 Ark.App. 20, 781 S.W.2d 497, 501 (1989). It is undisputed that Mobil had no knowledge of the transfer of Ipco No. 2 until after the sale to Graham. Therefore, Graham could not have relied upon any act or failure to act by Mobil in entering into its agreement with Petro.

## IV.

■ Graham next argues that the district court erred in finding that Graham had an obligation to indemnify Petro from liability. Section 13 of the Petro–Graham agreement provided conditions of indemnification:

You [Petro] shall continue to remain liable for and shall indemnify us [Graham] from and against any liability, loss, costs, claims or damages arising or accruing prior to the Closing, and such conditions shall be in or deemed to apply to all assignments, transfers and other documents conveying Interests to us. We [Graham] in turn shall be liable for and shall indemnify you [Petro] from and against any liability, loss, costs, claims or damages arising or accruing after the Closing.

Petro therefore agreed to indemnify Graham against claims which "accrued" before closing. Based on the language of the indemnity clause in the Petro–Graham agreement, our task is to determine when Mobil's claim for breach of contract accrued.

Arkansas deems a claim to have accrued when the breach occurred. Ark.Code Ann. § 4–2–725. *See also Dupree v. Twin City Bank,* 300 Ark. 188, 777 S.W.2d 856, 858 (1989) (cause of action for breach of contract accrues the moment the right to commence action comes into existence).

Mobil's claim for breach of contract is based on its right to preferential purchase which is established in section 17 of the JOA. Section 17 provides in part:

TRANSFER OF INTERESTS: In the event either party desires to sell or otherwise dispose of all or any part of its interest subject to this agreement, the other party hereto shall have a preferential right to purchase or acquire the same. In such event, the selling or disposing party shall promptly communicate to the other party hereto the offer received by it from a prospective transferee ready, willing and able to purchase or acquire the same, ... and said party shall thereupon have an option for a period of ten (10) days after the receipt of

said notice to purchase or acquire such undivided interest under the same or substantially the same terms offered by such prospective transferee....

Section 17 does not limit the notice requirement strictly to a sale but instead requires that notice be given whenever a party "desires to sell *or otherwise dispose of all or any part of its interest.*" (Emphasis supplied). Petro disposed of its interest on March 30, 1984, when it gave Graham an "Assignment, Bill of Sale and Conveyance" effective as of January 1, 1984. In doing so, Petro effectively transferred its entire interest in Ipco No. 2 to Graham, thereby triggering the notification requirement of section 17. Petro representatives testified that after the March 30, 1984 transfer, interest in Ipco No. 2 was effectively conveyed to Graham; Petro no longer owned the property and consequently no longer had the power to tender the property to Mobil should Mobil have chosen to exercise its preferential right.

Based on the language of the JOA and the fact that all parties agree that the conveyance of the property effectively occurred on March 30, 1984, Petro breached its contractual obligation to notify Mobil of Graham's offer to purchase at least 10 days prior to its conveyance of the property to Graham on March 30, 1984. Therefore, Mobil's claim arose prior to closing, and according to the provisions set forth in section 13 of the Petro–Graham agreement, Petro is required to indemnify Graham against liability. Accordingly, the decision of the district court finding that Graham is required to indemnify Petro is reversed.

We reject Petro's position that Article 7 of the Petro–Graham agreement, which required Graham to satisfy itself with regard to title to the properties being transferred, conferred upon Graham, rather than Petro, the ultimate responsibility to discover the preferential right in the JOA and notify Mobil of Graham's offer to purchase Ipco No. 2 prior to the March 30, 1984 transfer. Petro's argument ignores Article 10 of the Petro–Graham agreement which expressly

required Petro to obtain a waiver by a third party of any preferential right.[3]

## V.

Finally, Graham argues that the district court erred in its award of damages in two respects. First, Graham contends that there is no evidence to support the court's award of $72,584.50 for post-trial damages, and second, that the court's allowance of post-judgment interest at the rate of ten percent was erroneous as a matter of law.

First, Mobil claims that the $72,584.50 awarded as post-trial damages from July 1988 through December 1988 is based on production payments paid by Mobil to Graham under protest. The district court found that this amount properly reflected Mobil's damages during this period of time. Although Graham argues that this damage award is not established in the record, it does not specifically dispute the amount awarded.

Based on the district court's approval of $72,584.50 as reflecting Mobil's damages during the relevant time period, and Graham's failure to challenge this exact amount, we affirm the district court's award of these damages.

As to the second point, Graham argues that the district court erred in presumably applying an Arkansas prejudgment interest statute which establishes an interest rate of ten percent per annum, Ark.Code Ann. § 16–65–114, rather than applying 28 U.S.C. § 1961, which covers "any money judgment in a civil case recovered in a district court" and provides for interest from the date of judgment at a floating rate determined by the coupon yield of United States Treasury bills. *Id.* This court has found that actions based on diversity of citizenship are not exempted from this statute. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Knudsen,* 749 F.2d 496, 497 (8th Cir.1984). Therefore, 28

U.S.C. § 1961 must be applied to calculate the rate of post-judgment interest in this case. We reverse the district court's. finding to the contrary.

## VI.

In conclusion, we affirm the district court's finding that Petro and Graham breached Mobil's contractual rights under the JOA by failing to notify Mobil, prior to the March 30, 1984 transfer, of Graham's offer to purchase Ipco No. 2. We also affirm the district court's determination that the doctrines of laches and estoppel do not apply against Mobil. We reverse, however, the district court's finding that Graham is required to indemnify Petro under the terms of the Petro–Graham agreement and find instead that it is Petro's contractual obligation to indemnify Graham. Furthermore, we find that 28 U.S.C. § 1961 must be applied to determine post-judgment interest in this action.

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and the matter remanded for further proceedings consistent with this opinion.

---

**3.** Article 10 of the Petro–Graham agreement provided:

> If any of the Interests are subject to a preferential right of purchase by a third party, you [Petro] will obtain a waiver by the party of its preferential right in such form as will be timely supplied by us [Graham]. If you are unable to secure any such required waiver from a party holding a preferential right of purchase, your title shall be deemed to be defective. . . .