Cite as 2024 Ark. App. 494

# ARKANSAS COURT OF APPEALS

DIVISION II
no. CV-22-683

| | |
|---|---|
| | **Opinion Delivered** October 9, 2024 |
| JEFFERY C. FRAZIER<br>APPELLANT/<br>CROSS-APPELLEE | APPEAL FROM THE WHITE<br>COUNTY CIRCUIT COURT<br>[NO. 73DR-16-361] |
| V. | HONORABLE DANIEL C. BROCK,<br>JUDGE |
| JANA BLAND<br>APPELLEE/<br>CROSS-APPELLANT | |
| PAIGE BLAND<br>APPELLEE | REVERSED ON DIRECT APPEAL;<br>AFFIRMED ON CROSS-APPEAL |

## KENNETH S. HIXSON, Judge

This is the second appeal in this case involving paternity and child support.  In the first

appeal, *Frazier v. Office of Child Support Enforcement*, 2021 Ark. App. 65, 618 S.W.3d 415 (*Frazier*

*I*), appellant Jeffery C. Frazier appealed from a summary-judgment order wherein he was found

to be the father of appellee Paige Bland and ordered to pay a judgment of $179,080.54, which

represented nearly eighteen years in retroactive child support.[1]  The summary-judgment order

in *Frazier I* was entered in favor of both Paige and Paige's mother, Jana Bland.  In *Frazier I*, we

held that summary judgment was improper because material fact questions remained pertaining

to Jeffery's affirmative defenses to the claim for retroactive child support, and we reversed and

---

[1]In *Frazier I*, Jeffery did not dispute that he is Paige's father and he later stipulated to
being Paige's father.

remanded for a trial. After a bench trial on remand, the trial court found that Jeffery had proved the affirmative defense of laches as to Jana's (the mother's) claim for retroactive child support but that Jeffery did not prove any of his affirmative defenses as to Paige's (the daughter's) claim for retroactive child support. The trial court subsequently awarded Jana $18,138.44 in retroactive child support and awarded Paige $163,601.46 in retroactive child support.[2]

Jeffery now brings this second appeal. Jeffery does not challenge on appeal the $18,138.44 awarded to Jana; however, he does ask that the $163,601.46 judgment awarded to his daughter, Paige, be reversed. Jeffery makes two arguments. First, Jeffery argues that although our court affirmed Paige being joined as a party plaintiff in *Frazier I* after she reached the age of majority, Paige should not have been afforded any relief because she never filed a claim for relief on her own behalf in the trial court. Second, Jeffery also argues that the trial court's finding of laches as it pertained to Jana should have been applied equally to Paige to preclude a judgment for retroactive child support in favor of Paige.

Jana has cross-appealed, arguing that the trial court erred in applying laches to her claim for retroactive child support. Because Jeffery's direct appeal and Jana's cross-appeal have an overlapping issue regarding the finding of laches against Jana, we find it necessary in this opinion to consider Jana's cross-appeal before addressing Jeffery's direct appeal. For the reasons explained *infra*, we affirm on Jana's cross-appeal and the trial court's application of laches as to Jana's claim, and we reverse on Jeffery's direct appeal on the basis that the trial court's finding

_____

[2]The trial court's reasons for these specific awards will be discussed later in this opinion.

2

of laches as to Jana also impacted Paige such to preclude Paige's claim for retroactive child support.

I. *Standard of Review*

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *David v. David*, 2022 Ark. App. 177, 643 S.W.3d 863. In reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.* In a child-support determination, the amount of child support lies within the sound discretion of the trial court, and that court's findings will not be reversed absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). However, a trial court's conclusions of law are given no deference on appeal. *Id.*

II. *Facts and Procedural History*

Although the facts and procedural history of the initial round of litigation among the parties is explained more fully in *Frazier I*, we provide a brief summary here for context. Jana Bland was married to Mike Bland, and during their marriage they had a daughter. In 1994, Jana and Mike Bland were divorced. In the latter part of 1997, Jeffery Frazier was a member in the Air Force Reserves and transferred to the National Guard. In late 1997, Jeffery and Jana met and developed some kind of personal dating relationship that ended in June 1998. Jana became pregnant and Paige was born on September 21, 1998. There was conflicting evidence whether Jana informed Jeffery that Paige was his daughter. The record indicated that there was no contact between Jeffery and Paige during Paige's minority. Further, the last contact between

Jana and Jeffery was when Paige was three months old when Jana sued Jeffery in small claims court over a debt.[3]

As Paige was approaching graduation from high school, Jana became concerned with funding the future costs of Paige's college education. When Paige was still a minor but was approaching her eighteenth birthday, Jana decided to pursue retroactive child support against Jeffery, and she assigned her rights to child support to the Office of Child Support Enforcement (OCSE). OCSE filed a complaint to establish paternity and to recover retroactive child support against Jeffery on May 19, 2016, when Paige was seventeen years and eight months old. OCSE was the only named plaintiff in the complaint. OCSE alleged that Jeffery is Paige's father and that Jeffery should be ordered to pay nearly eighteen years of retroactive child support. Subsequent DNA testing showed a 99.99 percent probability that Jeffery is Paige's father.

After OCSE filed the paternity complaint requesting retroactive child support, Jana, Paige's mother, was made a party to the case on Jeffery's motion, and Paige (who had by then turned eighteen) was made a party to the case over Jeffery's objection. This was memorialized in the trial court's August 23, 2017, order, wherein the trial court found that OCSE shall be the first plaintiff, Jana shall be the second plaintiff, and Paige shall be the third plaintiff. About a month later, Jeffery filed a second amended response to the paternity and retroactive-child-support complaint wherein he raised the affirmative defenses of unclean hands, laches, waiver, and equitable estoppel.[4]

---

[3]The record does not reveal any details about this small-claims court case.

[4]There were several additional pleadings filed in the interim that are not relevant to this summary of facts and procedural history.

4

Jana and Paige submitted a joint motion for summary judgment on October 17, 2018, asking for $179,080.54 in retroactive child support representing nearly eighteen years of child support.[5] On November 8, 2018, Jeffery filed an amended response to the summary-judgment motion, arguing that there were genuine issues of material fact with respect to the applicability of his affirmative defenses. Jeffery attached his affidavit wherein he stated that although he was aware that Jana was pregnant in 1998, Jana had specifically told him the child was not his and that he was not made aware that Paige may have been his child until the initiation of this cause of action almost eighteen years later. Jeffery stated that if Jana had told him the child was his, he could have established a parent-child relationship with the child, which is now precluded because Paige has reached the age of majority.

On June 13, 2019, the trial court granted summary judgment "to the plaintiffs," Jana and Paige, and awarded retroactive child support of $179,080.54. Jeffery appealed from the order of summary judgment, arguing that the trial court erred in joining Paige as a party plaintiff and arguing further that summary judgment should be reversed because there were material issues to be decided with respect to his affirmative defenses. In *Frazier I*, we affirmed the trial court's decision to add Paige as a party plaintiff, noting that Ark. Code Ann. § 9-14-105(c) provides that "[a]ny person eighteen (18) years of age or above to whom support was owed during his or her minority may file a petition for a judgment against the nonsupporting parent or

---

[5]This figure was derived from the affidavit of an OCSE child-support specialist who had calculated the arrearage based on Jeffery's admitted income as applied to Administrative Order No. 10, and there was no issue regarding this calculation in *Frazier I*. The record does not indicate why OCSE did not join the motion for summary judgment.

parents." However, in *Frazier I*, we reversed in part based on our holding that a child-support judgment is subject to equitable defenses that apply to all other judgments and that in light of Jeffery's affidavit, material facts were created as to whether his asserted affirmative defenses should bar the claim for retroactive child support. Accordingly, in *Frazier I*, we reversed and remanded for a trial.

That brings us to the second round of litigation from which the present appeal arose. After our remand—on October 12, 2021—the trial court entered an agreed order granting OCSE's motion to withdraw from the case as a plaintiff. In that order, the trial court stated that Jana had revoked the assignment of her child-support rights to OCSE and that Jana, Paige, and Jeffery waived any objection to the withdrawal of OCSE from the case. The trial court noted in the order that it had previously made Jana and Paige party plaintiffs to the case, and it changed the style of the case to "*Jana L. Bland (First Plaintiff) & Paige E. Bland (Second Plaintiff) v. Jeffery C. Frazier (Defendant).*"

On April 1, 2022, the case proceeded to trial.[6] Jana was the first witness to testify. Jana testified that she had been in an exclusive intimate relationship with Jeffery for about a year until they broke up in June 1998. Paige was born three months later in September 1998. Jana testified that the only possible father was Jeffery and that she informed Jeffery he was the father during the pregnancy. Jana maintained that she never told Jeffery he was not Paige's father.

---

[6]In the interim two years that *Frazier I* was proceeding through the court of appeals, Jeffery had paid Jana $39,388.44 toward the retroactive child-support judgment in periodic payments. After the retroactive child-support order was reversed by the court of appeals and remanded, the trial court ordered Jana to repay Jeffery the $39,388.44 in periodic payments. This is discussed in more detail below.

6

Jana stated that she was previously married to Mike Bland until they divorced in 1994 and that they have a daughter together. Jana stated that after Paige was born, she gave Paige the surname "Bland" because it was the surname of Jana[7] and Paige's older half sister. Jana stated that although she never held Paige out as Mike's daughter, Paige developed a relationship with Mike Bland's parents and referred to them as "Mimi" and "Papa," and Paige was also close with Mike's sister and her husband, whom she considered her aunt and uncle. When Mike's mother passed away, Paige was identified in the obituary as her grandchild, and when Mike's sister's husband passed away, Paige was identified in the obituary as his niece.

Jana stated that, other than suing Jeffery in small claims court to recover an unpaid debt when Paige was three months old, she made no attempt to contact Jeffery during the intervening eighteen years since Paige was born. When asked why she did not file a paternity action against Jeffery at that time, Jana stated, "It would be within my right to do it then or now."

When asked why she decided to pursue retroactive child support in 2016, Jana stated that she wanted Paige to go to college but she did not have the means to pay for it. Jana stated that when she contacted OCSE to pursue the claim, she told OCSE the reason she had not previously pursued child support was because she did not know Jeffery's location. However, Jana acknowledged that information she provided to OCSE about Jeffery was information she had known since Paige was very young, and she further acknowledged that she was aware that Jeffery had married shortly after Paige was born and lived with his wife in Searcy for a couple of years.

---

[7]Jana retained the name "Jana Bland" after her divorce in 1994 from Mike Bland.

Mike Bland, Jana's ex-husband, testified that he was living outside the country when Paige was conceived and he has never held himself out as Paige's father, although he admitted that his family treated Paige as their own. He stated that Paige refers to him as "Uncle Mike" and that "we wanted to make sure she knew she was part of our family . . . because she [is Mike's daughter's half] sister." Mike stated that he and his family love Paige.

Paige Bland testified that she was never told that she was Mike Bland's daughter and that she never considered him her father. Paige stated, however, that she considers herself part of the Bland family. She testified that when she was in elementary school, she learned "that [she] did have a dad out there" when Jana informed her that Jeffery was her father. Paige stated that she has never had any contact with Jeffery. She testified further that she thought it would be in her best interest to be awarded retroactive child support, and that if it were awarded, she would use it to further her education.

Jeffery Frazier testified that he was in a relationship with Jana in the latter part of 1997 and early part of 1998. He was in the National Guard and was training in Texas from October 1997 to March 1998. Jana came to visit him a couple of times when he lived in Texas. Jeffery stated that sometime after he returned to Arkansas in the spring of 1998, Jana told him she was pregnant. Jeffery said that Jana had a "baby bump" and told him the baby was his. However, according to Jeffery, a few days later Jana told him it was not his baby. After that, their relationship ended, and Jeffery had no further contact with Jana and moved on with his life. Jeffery continued to live in Arkansas for the next two years before moving to Maine. Jeffery currently lives in New Hampshire and works as a defense contractor. Jeffery testified that he

8

never did anything to make it difficult for someone to find him. He also testified that had he known that he is Paige's father, he "absolutely" would have been involved in her life.

Stacy Roland, a program supervisor for OCSE, testified about the amount of retroactive child support that would be owed based on Jeffery's admitted income during the relevant time frame as applied to Administrative Order No. 10. Stacy testified that the full amount of retroactive child support under the appropriate child-support guidelines is $181,739.90.[8]

On June 28, 2022, the trial court entered the judgment that is the subject of this appeal and cross-appeal. In the judgment, the trial court found that based on DNA testing and the stipulation of the parties, Jeffery is the biological father of Paige and established paternity. The trial court found that Jeffery owed $181,739.90 in retroactive child support based on Jeffery's admitted wages as applied to the child-support guidelines then in place for each year calculated. On the issue of whether Jeffery knew that Jana was pregnant with his child, the trial court found Jana's testimony credible and Jeffery's testimony unconvincing. The trial court found that Jeffery knew Jana was pregnant with his child and that Jeffery had a duty to support his child. The trial court found that Jeffery did not prove the affirmative defenses of waiver, equitable estoppel, or unclean hands to bar Jana's claim for retroactive child support; however, the court did find that Jeffery proved the affirmative defense of laches as to Jana's claim for retroactive child support. The trial court found that Jana had the necessary information to locate Jeffery to establish

---

[8]This figure varies slightly from the total retroactive child-support figure arrived at in *Frazier I* because, according to Stacy, the OCSE child-support specialist in *Frazier I* was using the wrong child-support chart for some of the years upon which the arrearages were calculated. However, as was the case in *Frazier I*, there is no issue in this appeal regarding OCSE's total retroactive child-support calculation.

9

paternity and child support at all times but that she simply chose not to do so until Paige was almost an adult eighteen years later.

The trial court acknowledged that Jana's previous judgment against Jeffery for retroactive child support in the amount of $179,080.54 was "*void ab initio*" when the summary judgment was reversed by the court of appeals in *Frazier I*. As is typical in domestic-relations cases where child-support awards are appealed, Jeffery began making periodic payments on the $179,080.54 retroactive award that was ultimately voided. The record reveals that during the two-plus year pendency of *Frazier I*, Jeffery had made payments on the voided retroactive summary-judgment award in the amount of $39,388.44. In the trial court's final order herein, the court stated,

> On remand, this Court ordered Jana Bland to begin paying back the sums previously collected because the order previously awarding judgment was void ab initio.[9] By the time of the trial, Jana Bland still owed the sum of $18,138.44 to Jeffery Frazier. Jeffery Frazier is therefore credited with the amount still held by Jana Bland, thereby leaving the remaining amount to be paid to Jana Bland on the judgment established in this Order to be $0.00.

While the language is somewhat confusing, it appears that the trial court was attempting to fashion an equitable remedy in Jana's favor. In this order, the trial court previously found that Jeffery was obligated to pay $181,739.90 in retroactive child support without directing to whom it was owed. Instead of requiring Jana to continue to repay the $18,138.44 outstanding balance of the void summary judgment to Jeffery, the trial court found that "[b]ased on the equities of the case, the length of time Jana waited to bring this action, and all other evidence considered and properly weighed," Jana is awarded $18,138.44 in retroactive child support,

---

[9]The record does not contain this order.

which was the exact amount of the balance she owed to Jeffery on the voided summary judgment. Apparently, instead of requiring Jana to repay the $18,138.44 balance of the voided judgment, the trial court fashioned a remedy that allowed Jana to retain those funds, awarded her a self-satisfying judgment in the amount of $18,138.44, and gave Jeffery a corresponding $18,138.44 credit against any retroactive child support awarded to Paige.[10]

Turning to Paige's claim for retroactive child support, the trial court found in the final order that Jeffery did not prove any of his four affirmative defenses with respect to Paige's claim, and the trial court awarded Paige $163,601.46 in retroactive child support, which represents the total amount of $181,739.90 less a credit in the amount of $18,138.44 separately awarded to Jana. In essence, the trial court refused to hold that the laches defense that applied to Jana's claim vicariously barred Paige from recovery.

Jeffery now appeals, arguing that the retroactive child support awarded to Paige should be reversed primarily because the trial court's finding of laches as it pertained to Jana should have been applied equally to Paige to preclude a judgment for retroactive child support. Jana cross-appeals, arguing that the trial court erred in applying laches to her claim for retroactive child support. As stated previously, because both the direct appeal and cross-appeal have an overlapping issue regarding the finding of laches against Jana, we will address Jana's cross-appeal before addressing Jeffery's direct appeal.

III. *Jana's Cross-Appeal*

---

[10]This self-satisfying "judgment" awarded by the trial court is not relevant for purposes of this appeal because Jeffery did not appeal this award. However, it is relevant in the companion appeal concerning the award of attorney's fees, which we have also decided today. *See Frazier v. Bland*, 2024 Ark. App. 495, ___ S.W.3d ___.

11

In Jana's cross-appeal, she argues that the trial court erred in applying laches to her claim for retroactive child support. For the following reasons, we disagree.

In *Padgett v. Haston*, 279 Ark. 367, 651 S.W.2d 460 (1983), the supreme court stated that in order to apply the doctrine of laches, it must be shown that there was an unreasonable delay in asserting some right, and because of the delay, the party claiming the protection of laches changed his position to his detriment so as to make it inequitable to enforce the asserted right. In *Padgett*, the supreme court explained further:

> There is no hard and fast rule as to what constitutes laches. It is well settled that a court of equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and where injustice would be done in the particular case by granting the relief asked. It is usually said that the two most important circumstances in such cases are the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other in so far as it relates to the remedy.

279 Ark. at 376–77, 651 S.W.2d at 465 (quoting *Avera v. Banks*, 168 Ark. 718, 723, 271 S.W. 970, 972 (1925)).

Citing *Warford v. State*, 2010 Ark. App. 635, 378 S.W.3d 239, Jana states that the doctrine of laches is applicable only where equitable relief is sought, and she argues that it cannot be applied here because she is seeking a legal remedy. Jana argues further that, even if laches could apply here, the facts do not support this affirmative defense given the trial court's credibility determinations and its finding that Jeffery knew that Jana was pregnant with his child and that Jeffery had a duty to support his child. Jana also asserts that her delay in waiting to bring the action until Paige was almost eighteen resulted in no detrimental change in Jeffery's position, and she notes that when she brought her claim for retroactive child support, the claim

was well within the applicable statute of limitations.[11]  Finally, Jana argues that the trial court erred in finding that laches applied to the entirety of her claim beginning from the day Paige was born.

As an initial matter, contrary to Jana's argument, as we held in *Frazier I*, the enforcement of a child-support judgment is subject to the equitable defenses that apply to all other judgments. *See Miller v. Ark. Off. of Child Support Enf't*, 2015 Ark. App. 188, 458 S.W.3d 733. This includes the application of laches, which is based on the particular circumstances of each case and is a question of fact for the trial court. *Id.*

While not directly on point, we find our decision in *Arkansas Department of Human Services v. Forte*, 46 Ark. App. 115, 877 S.W.2d 949 (1994), to be instructive. In *Forte*, the child was born out of wedlock, and Nathaniel Forte was aware that he was the child's father. Sixteen years later, the Arkansas Department of Human Services filed a complaint against Forte on the mother's behalf, seeking both prospective and retroactive child support. The evidence showed that Forte provided some support for the child after the child was born, which the mother testified was minimal. The trial court awarded only $6000 in retroactive child support, and the Department argued on appeal that this was deficient. However, we affirmed the trial court's decision and stated, "In making this award, the chancellor stated that based upon the equities of the case, the length of time [the mother] waited in bringing the action, 'everything considered,' arrearage would be awarded in the amount of $6000." *Forte*, 46 Ark. App. at 119–20, 877

---

[11]Arkansas Code Annotated section 9-14-105(e) provides that a party must bring an action for child support within five years from the date the child reaches eighteen years of age.

S.W.2d at 952. We concluded under the circumstances in *Forte* that the chancellor's determination of what was fair was not erroneous, citing, among other things, the length of time the mother waited before bringing an action for support.

In *Green v. Bell*, 308 Ark. 473, 479, 826 S.W.2d 226, 230 (1992), in discussing retroactive child support, the supreme court stated that "the question is simply what is fair," and quoted from *Ryan v. Baxter*, 253 Ark. 821, 824–25, 489 S.W.2d 241, 244, as follows:

> The granting or denial of such a recovery rests upon the equities in a particular case. We have in several cases, recognized the equitable nature of such an award. Thus, in order to find that the chancellor committed reversible error, we would have to hold that his finding as to where the equities lay was against the preponderance of the evidence.[12]

Under the circumstances presented herein, we cannot say the trial court's finding that laches applied to Jana's claim for retroactive child support was clearly erroneous. The trial court found that Jana had the necessary information to locate Jeffery to establish paternity and child support at all times, and she simply chose not to do so until Paige was almost an adult. When asked why she did not bring a paternity action against Jeffery to establish child support when Paige was three months old and Jana had sued Jeffery in small claims court on an unrelated matter, Jana testified, "It would be within my right to do it then or now." Further, it appears that what motivated Jana to pursue eighteen years of retroactive child support was the upcoming costs of a college education for Paige. By waiting until Paige was almost eighteen to initiate the action, Jana sought a judgment for eighteen years of child support that Jeffery could have been paying to support his daughter over the course of her minority rather than being subjected to a

---

[12]The supreme court has stated that clearly against the preponderance of the evidence is the same standard as clearly erroneous. *Greenwood v. Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979).

lump sum for the balance. The trial court found that laches applied to Jana's claim and thus she could not recover the full $181,739.90 she claimed in retroactive child support. However, as in *Forte*, the trial court did not completely deny Jana's claim for retroactive child support. The trial court fashioned an equitable remedy and awarded Jana a self-satisfying judgment so that Jana could retain $18,138.44 that Jeffery had previously paid on the voided summary judgment. The trial court found, "Based on the equities of the case, the length of time Jana waited to bring this action, and all the other evidence considered and properly weighed, retroactive support is awarded to Jana in the amount of $18,138.44." Having considered the evidence, we hold that the trial court did not clearly err in finding that Jana's near eighteen-year delay in bringing the action, along with the absence of any reasonable explanation for the delay, created an inequity and that injustice would be done by granting the relief requested and that the trial court did not err by applying the equitable defense of laches. Again, we note that Jeffery did not appeal this self-satisfying judgment, and we therefore conclude that this determination by the trial court of what was fair under the circumstances was not clearly erroneous. Accordingly, we affirm on Jana's cross-appeal.

IV. *Jeffery's Direct Appeal*

Although the trial court found that laches applied to Jana's claim for retroactive child support, it declined to apply laches or any other equitable defense to Paige's claim, and it awarded Paige the balance of the entire amount of retroactive child support not awarded to Jana, which was $163,601.46. On appeal from this award to Paige, Jeffery first argues that although our court affirmed Paige being joined as a party plaintiff in *Frazier I* after she reached the age of majority, Paige should not have been afforded any relief because she never filed a claim for relief

15

on her own behalf in the trial court. Jeffery also argues that the trial court's finding of laches as it pertained to Jana should have been applied equally to Paige to preclude a judgment for retroactive child support in favor of Paige. In making this argument, he relies primarily on the supreme court's decision in *Chitwood v. Chitwood*, 2014 Ark. 182, 433 S.W.3d 245. We need not discuss Jeffery's first point on appeal because, assuming Paige was not required to file an independent claim for retroactive child support because she could rely on the previously filed claim by OCSE for the same support, we agree with Jeffery's second argument that under the circumstances presented, the trial court's finding of laches against Jana acts as a bar to Paige's claim as explained below.

As an initial matter, Paige argues that Jeffery did not make his argument that laches applied to her to the trial court and is therefore barred from raising the argument on appeal.[13] However, we disagree. At the bench trial, Jeffery cited *Chitwood*, upon which he relies on appeal, and he argued that because Jana's claim was barred by laches so was Paige's claim because Jana's laches was imputed to Paige. We conclude that this was sufficient to preserve the issue for appeal.[14]

Turning to the merits of Jeffery's argument, he contends that under the circumstances presented, Paige should not have been awarded retroactive child support because the trial court

---

[13]It is axiomatic that we will not consider arguments raised for the first time on appeal. *Watkins v. Adams*, 2021 Ark. App. 261.

[14]We observe that Paige also argues that Jeffery's laches argument is barred by the law-of-the-case doctrine due to our holding in *Frazier I*. However, because Paige did not raise her law-of-the-case argument below, she is barred from raising it now, and we do not address it. *See Clemmons v. Off. of Child Support Enf't*, 345 Ark. 330, 47 S.W.3d 227 (2001).

found that laches applied to Jana's claim for the same child-support arrearage. For the following reasons, we agree that Paige should not have been awarded retroactive child support.

Arkansas Code Annotated section 9-14-105 applies to initial petitions for child support. Under subdivision (b)(1) of the statute, a parent having custody of the child may file a petition for child support, and under subsection (c), a person eighteen years of age or above to whom support was owed during his or her minority may file a petition for child support. The supreme court cases discussed below offer guidance as to the interplay between the parent's right to file for child support of his or her minor child vis-à-vis the child's right to file for child support upon his or her reaching the age of majority.

In *Chunn v. D'Agostino*, 312 Ark. 141, 847 S.W.2d 699 (1993), the children's father allegedly did not pay child support as ordered. The law at the time of *Chunn* was that the mother could pursue a claim for unpaid child support, but the claim was subject to a five-year statute of limitations. The children's mother did not pursue a claim for retroactive support within five years, and therefore, the mother's claim was barred. Several years later, the two minor children became adults, and the two adult children sued their father for retroactive child support that had accumulated during their minority. However, because the children's mother had failed to bring a claim for retroactive support within the five-year statute of limitations that was then in effect, the trial court held that a claim for retroactive child support was barred and dismissed the adult children's claim. The children argued that they could not have brought the action earlier because they were unable to bring their own action before turning eighteen. Nonetheless, the trial court denied the children's claim for retroactive child support, and the supreme court affirmed. The supreme court reasoned:

17

Sonya and Daniel Chunn argue they could not have brought this action until after they reached eighteen, and the law allows them to bring it for five years after reaching that age. That is, of course, a correct statement, but it does not make their claim a different one from that which was barred when their mother failed to bring it within the then-applicable five-year limitation period. As we read the statute it contemplates *one support obligation* which may be pursued by different persons at different times. The limitation period is applicable to all of them[.] . . .

While it may seem unfair to hold that a child for whose benefit support was ordered is barred from seeking the arrearages because his or her custodial parent failed to assert the right when it was his or her prerogative to do so, we must also look to the classic finality rationale to which we alluded in the *Johnson* [*v. Lilly*, 308 Ark. 201, 823 S.W.2d 883 (1992)] case. For more than five years after the arrearages accrued the person who could have brought the action to collect them did not do so.

*Chunn*, 312 Ark. at 145, 847 S.W.2d at 701 (emphasis added).

A case more on point is *Chitwood*, *supra*, upon which Jeffery primarily relies on appeal. In *Chitwood*, Gordon Chitwood's adult daughter, Kylie, filed a complaint to collect an alleged child-support arrearage that had accrued between 1999 and 2004. However, Kylie's mother had previously filed a lawsuit against Gordon to collect the same arrearage, but the trial court found she was equitably estopped and dismissed the lawsuit. Kylie's mother appealed that decision in *Chitwood v. Chitwood*, 92 Ark. App. 129, 211 S.W.3d 547 (2005) (*Chitwood I*). In *Chitwood I*, our court had affirmed the finding that the mother was equitably estopped from asserting her claim for unpaid support during this time period and dismissed the claim. After *Chitwood I* was delivered, Kylie subsequently filed her own claim as an adult for retroactive support against Gordon (*Chitwood II*). In *Chitwood II*, the trial court entered summary judgment against Kylie on her claim for the retroactive child support, finding that no arrearage existed because her mother was equitably estopped from collecting the support in a previous lawsuit and that claim had been concluded and dismissed. Kylie asserted on appeal that this was erroneous, arguing

18

that the equitable-estoppel defense that her father had used successfully in the earlier lawsuit filed by her mother could not be asserted in the present lawsuit because there were no facts to satisfy the elements of equitable estoppel against her. Kylie also argued that her mother's actions did not absolve her father of his legal and moral obligation to pay child support.

However, the supreme court in *Chitwood* disagreed with Kylie's arguments and affirmed the summary judgment. The supreme court stated that there have been cases where the custodial parent, the adult child, or the custodial parent even after the child reached majority, was allowed to pursue collection of a child-support arrearage. The supreme court stated, however, that although the statute contemplates one support obligation that may be pursued by different persons at different times, once a child reaches majority, whoever files the collection action first is allowed the right and ability to collect (*citing Clemmons v. Office of Child Support Enf't*, 345 Ark. 330, 47 S.W.3d 227 (2001)). The supreme court held that "when a custodial parent files suit to collect an arrearage for the support of a minor child, that child may not also sue for the same arrearage once the child reaches majority." *Chitwood*, 2014 Ark. 182, at 5–6, 433 S.W.3d at 248. The supreme court explained further:

> While it is true, as Appellant argues, that she could not have maintained her action until she reached majority, that does not make her claim for support a different one from the one pursued by her mother that was barred. . . .
>
> In sum, we conclude that the alleged arrearage for the challenged period was a *singular obligation of support* that has previously been litigated and barred from collection due to the doctrine of equitable estoppel.

*Chitwood*, 2014 Ark. 182, at 7, 433 S.W.3d at 249 (emphasis added).

We acknowledge Paige's argument that *Chitwood* is distinguishable because in *Chitwood* there were two separate lawsuits filed by the mother and daughter, and in the case at bar, there is only one lawsuit but two separate claims by the mother and daughter, respectively. However, we hold that such a distinction is of no consequence for these purposes. In either situation, there existed a singular obligation of support, and that singular obligation was litigated and barred as to the mother; therefore, it is also barred as to the adult child.

Applying the standards set forth above by our supreme court in *Chunn* and *Chitwood*, we hold that the trial court clearly erred in not finding that because laches applied to Jana's claim for retroactive child support, which resulted in the denial of the claim, such application barred Paige's claim.[15] In both *Chunn* and *Chitwood*, the supreme court held that child support constitutes a singular obligation. And in *Chitwood*, the supreme court held that because the mother's claim for child support brought when the child was a minor was barred by an equitable defense, under the singular-obligation principle, so was the daughter's claim for the same arrearage that was pursued after the daughter reached the age of eighteen. We reach the same result here. For these reasons, we hold that the trial court erred in awarding Paige $163,601.46 in retroactive child support, and we vacate that award.[16]

---

[15]We are not holding that the laches defense as applied to Jana's claim is applied, per se, to Paige's claim. Rather, we are holding that because Jana's claim for $163,601.46 was tried and dismissed based on the equitable defense of laches, under the singular-obligation principle espoused in *Chunn* and *Chitwood*, Paige's claim for retroactive child support is barred.

[16]We note that, after this case was submitted and the original briefing was completed, Jeffery filed a motion for supplemental briefing based on a statutory amendment that became effective that limited an adult child's retroactive child-support recovery to support owed for the last three years prior to the adult child's reaching majority. *See* Ark. Code Ann. § 9-14-105(c)(2)

V. *Conclusion*

In conclusion, for the reasons explained herein, we reverse on Jeffery's direct appeal, and we vacate the trial court's award of $163,601.46 in retroactive child support awarded to Paige. We affirm on Jana's cross-appeal.

Reversed on direct appeal; affirmed on cross-appeal.

BARRETT and WOOD, JJ., agree.

*James & Streit*, by: *Jonathan R. Streit* and *Elizabeth James*, for appellant/cross-appellee.

*Robert Hudgins*, for separate appellant/cross-appellee Jana Bland.

*Robert M. Abney, P.A.*, by: *Robert M. Abney*, for separate appellee Paige Bland.

---

(Repl. 2023). We granted the motion for supplemental briefing, and Jeffery filed a supplemental brief arguing that, in the event we disagree with his argument on appeal that Paige should be barred from recovering any child support, this amendment should be applied retroactively such that Paige's recovery of child support be limited to the last three years of her minority. Because we have reversed on Jeffery's direct appeal and vacated the child-support award to Paige in its entirety, we need not address the supplemental alternative issue pertaining to the above-referenced statutory amendment.